## McGee v. Brame, et al.

(Decided June 12, 1917.)

## Appeal from McCracken Circuit Court.

1. ·Wills—Contest—Testamentary Capacity—Undue Influence—Burden of Proof.—A will may be set aside upon sufficient proof of undue influence exercised upon the mind and will of the testator by another, although he may have been possessed of testamentary capacity to make a will. While it is the doctrine in this jurisdiction that the burden of proof upon the issue of undue influence is upon the contestants of the will, yet it may be established by a simple preponderance of the evidence. Therefore, the burden of proof is never greater upon this issue than the mere duty of establishing the undue influence .by a preponderance of the evidence; and as undue influence is generally employed surreptitiously, the evidence by which it is established is, in a very large degree, circumstantial, and the question of undue influence especially one for the jury.

2. Wills—Contest—Undue Influence—Evidence.—Where in a .contest to set aside the will of a testatrix on the ground of undue influence it was made to appear from the evidence that the relations between the testatrix and her daughter, the contestant, were affectionate and cordial; that the testatrix at the time of the execution of the will lived with her son and his daughter, the contestees, to whom her entire estate, excepting $5.00 to the contestant, was devised; that she was in ill health and a helpless cripple; that the will was written by an official associate and intimate· friend of the son and. by his procurement; that the testatrix constantly stood in fear of her son and was a frequent recipient of brutal treatment at his hands; and that soon after the making of the will she announced to various persons that it was made through fear of her son and she intended to make another will giving her daughter, the contestant, an equal share in her estate as soon as she became able to leave her bed and see a lawyer; held, that this evidence authorized the submission of the case to the jury and the giving of a peremptory instruction by the circuit court directing the jury to sustain the will, is reversible error.

W. A. BERRY for appellant.

WHEELER & HUGHES for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE— Reversing.

Mrs. Nancy C. Brame, a widow seventy-five years of age, died at her residence in Paducah, Kentucky, January 2, 1916, survived by the two children that were born

to her, Henry C. Brame and Mrs. Mollie McGee. Mrs. Brame left a will purporting to have been executed April 29, 1915, but which was not in fact executed until some time in May following, whereby she bequeathed to her daughter, Mrs. Mollie McGee, in money the sum of $5.00, and devised to her son, Henry C. Brame, a small farm owned by her in McCracken county, a lot on Hays avenue in the city of Paducah, and the proceeds of an insurance policy on her life in the Prudential Life Insurance Company; and to her granddaughter, Vera Brame, the daughter of Henry C. Brame, another house and lot on Hays avenue in the city of Paducah. The value of the property thus devised to Henry C. Brame and his daughter, Vera Brame, was between $6,000.00 and $8,000.00. The will appointed Henry C. Brame executor without bond.

After the death of the testatrix the will was duly admitted to probate by the McCracken county court. An appeal was prosecuted by Mollie McGee from the order of the county court, admitting the will to probate, to the circuit court, the grounds of contest being alleged want of testamentary capacity on the part of the testatrix, and that the will was procured by undue influence exercised upon her by Henry C. Brame. After proof by contestees of the execution of the will, the contestant introduced her evidence, at the conclusion of which, upon motion of the contestees, the court peremptorily instructed the jury as follows:

"The court instructs that you will find that the writing exhibited to you in evidence is the last will and testament of Mrs. Nancy C. Brame, deceased."

In obedience to this instruction, the jury returned a verdict sustaining the will, and from the judgment entered upon that verdict, the contestant has appealed to this court.

The grounds filed by the latter in support of her motion for a new trial in the court below were: (1) That the circuit court erred in giving the peremptory instruction. (2) That the verdict of the jury was contrary to the law and the evidence; and the same grounds are now relied on in this court, for the reversal of the judgment asked by her.

The execution of the will was established by the testimony of George Broadfoot, who proved the signature of the testatrix, his own signature, as one of the attesting witnesses, and that of George Shepherd, the other attesting witness to the instrument. He also testified that he

read the will once or twice to the testatrix; that she said she understood it, and seemed to be satisfied with it.

Our examination of the record convinces us that there is no contrariety of evidence as to the following facts, viz.: That the testatrix was a cripple for several years prior to her death; that she was in ill health, confined to her room, and, much of the time, to her bed, when the memoranda was made from which the will was written, as well as when the will, two weeks later, was signed and witnessed; from which time until her death she was physically helpless and constantly ill; that for a year previous to her death her son, Henry C. Brame, and his daughter, Vera Brame, the chief beneficiaries under the will, resided with the testatrix at her home, which was owned by her; that the will was written by George Broadfoot, a justice of the peace with whom Henry C. Brame, who was a constable, kept his office; that Broadfoot, at the request of Henry C. Brame, went with the latter in his buggy to the house of the testatrix for the purpose of writing her will, who, after conducting Broadfoot to his mother's bedside and telling her that he was there to write the will, himself remained in an adjoining room until the memorandum was made by Broadfoot from which he later wrote the will; and that when Broadfoot, a week or two thereafter, went to the home of the testatrix in company with George Shepherd, the other subscribing witness to the will, for the purpose of obtaining its execution by the testatrix, he did so at the request of Henry C. Brame.

No positive evidence was furnished by any witness introduced for the contestant to the effect that the testatrix was without testamentary capacity at the time the will was executed, and if the decision of the case turned upon that question alone, we would feel free to say that the verdict directed by the peremptory instruction should not be disturbed. But, as in our view of the case, it can not properly be said that the other ground of the contest, viz., that the execution of the will was procured by undue influence on the part of the appellee, Henry C. Brame, is without support from the evidence, it becomes necessary to consider what evidence was introduced on that question, and to determine whether it was sufficient to authorize the submission of the case to the jury. We understand the rule to be as stated in Page on Wills, section 407, wherein it is said:

"The burden of proof is never greater upon the issue of undue influence than the duty of establishing the issue by a preponderance. It is, therefore, error to charge the jury that in order to avoid the will, the circumstances of execution must be inconsistent with any hypothesis except that of undue influence."

Again the same author says, in section 404:

"As undue influence is generally employed surreptitiously, the evidence by which it is established is, in a very large degree, circumstantial, and the question of undue influence is especially one for the jury."

In Murphy's Ex'r v. Murphy, 146 Ky. 396, in discussing this subject, we said:

"While it is the doctrine in this state that the burden of proof upon the issue of undue influence is upon the contestants of the will, yet it may be established by a simple preponderance of the evidence. Johnson v. Stevens, 93 Ky. 128; Barlow v. Waters, 16 R. 426; Dunaway v. Smoot, 23 R. 2289; Powers v. Powers, 25 R. 1468; Milton v. Hunter, 76 Ky. 163; Lichy v. Schrader, 104 Ky. 657; Johnson's Admr. v. Johnson, 20 R. 139; Fry v. Jones, 95 Ky. 149."

In Walls v. Walls, 30 R. 950, it is said:

"Direct proof of undue influence can seldom be had. Like fraud, it must be proved, ordinarily by circumstances, and though each circumstance standing alone might be quite inconclusive, yet the effect of all the circumstances, when taken together, may be more convincing. It has often been said that if under all the circumstances of the case the will is unnatural in its provisions, and inconsistent with the obligations of the testator, to the different members of his family, the burden rests upon the propounder to give some reasonable explanation of its unnatural character. It is true, this court has said that an instruction so declaring should not be given to the jury under any system of practice, but the soundness of the principle of law has never been doubted. The rule is that if there is any evidence, the question is for the jury. The scintilla rule has been so long followed in this state that the question is no longer open."
Watson, Ex. v. Watson, 121 S. W. 625.

In Barber's Exr. v. Baldwin's Exr., 138 Ky. 734, inequality in the disposition made by the testator of his estate was one of the things relied on by the contestant to show undue influence. There was but a scintilla of evi-

dence tending to show undue influence on the part of the beneficiaries of the will. The court said.:

"These acts and circumstances being some evidence, slight it may be conceded they are, it was the duty of the trial court, under the oft announced rule of this court, to submit the question to the jury for their determination under proper instructions."

The facts and circumstances furnishing considerable evidence of the undue influence charged in the instant case are apparent in part from the conduct of Henry C. Brame in procuring the execution of the will in the manner already referred to. That is, it is admitted by Broadfoot, the writer of the will, that he was advised by Henry C. Brame that the testatrix desired him to write the will; that Brame carried him in his buggy to the home of the testatrix for that purpose and upon getting there advised the latter that such was the purpose of Broadfoot's visit; and. when Broadfoot later, after writing the will, went again to the testatrix's home to obtain her signature to and approval of the instrument; this visit was also made at the request of Brame. It is likewise a fact of no little significance that Broadfoot and Brame then occupied the same office and were officially associated together, the one as justice of the peace and the other as constable. If by reason of the illness and consequent helpless condition of the testatrix, she had been forced to make the will as demanded by her son, what would be more natural than that he should go to his intimate friend and official associate, Broadfoot, to obtain his assistance in procuring its execution? Broadfoot admitted that it was probable he showed the will to Brame after its execution, and was unable to state what disposition he made of it after returning with it to his office. It is true he gave it as his impression that he had placed it in the safe in his office, but of this he was uncertain. As Shepherd, whose name appears to the will as an attesting witness with that of Broadfoot and whose absence from the trial is unexplained by the record, did not testify, it cannot be known what knowledge he possessed as to what was said or done by the testatrix and others present when the will was executed.

It also appears from the evidence of the contestant and several of the witnesses introduced in her behalf that within a few days after the execution of the will the testatrix began to complain that she had been forced to make it by her son, Henry C. Brame, and declared it to be her

purpose to make another will giving an equal share of her estate to the contestant, and these complaints and statements she continued to make down to the time of her death seven months after the will was executed. To the contestant, Mrs. McGee, and daughter, Ruth McGee, in the presence and hearing of Mrs. Alice Bailey, the testatrix, in June, 1913, said in substance, that her son had forced her to make the will; that she had to make it; that she was scared to death of him and had to do anything he told her to do. To another witness, Mrs. Fannie Walker, she said, shortly after the above conversation, that she had made her will, but it had not been made like she wanted it made. Upon being asked by Mrs. Walker how she made the will, the testatrix said: "I have made it to Henry and Vera." Mrs. Walker then asked her, "Why did you make it that way?" and the answer of the testatrix was, "You would if you had to." In this conversation she told Mrs. Walker that if she ever got able to get out of that bed and get to a lawyer she would have the will changed; that she was there at their mercy and had to do what they said, referring to her son, Henry C. Brame, and his daughter, Vera Brame. Mrs. Walker also testified that the testatrix told her, in speaking of Henry Brame, her son:

"Aunt Fannie, he is so mean to me; I asked him to do something for me and he got mad and took me up and slammed me down and hurt me, and I have not been able to walk since."

To the same witness testatrix further said, that one night she wanted water and called to her granddaughter, Vera, but could not make her hear, and that in the midst of the calls she was making for Vera her son Henry came in the house and when called by her and asked to bring her a drink of water, he went to her bed and "slapped her jaws until her head nearly burst." Mrs. Sayer, another lady who visited her during her illness, testified that the testatrix made to her declarations respecting the will and her son's treatment of her, similar to those already mentioned. On one of these visits the testatrix said to Mrs. Sayer, "Henry whipped me," and when Mrs. Sayer said, "Oh, no, grandma, you don't mean that, he surely did not mean to hurt you," the testatrix replied, "Yes, he did; he is just as mean as he can be." On yet another occasion, while Mrs. Sayer was visiting the testatrix the latter stated to her: "Henry says I am getting so dirty and nasty that he can't stay in the room

where I am." When this statement was made it was overheard by Henry Brame, who was sitting on the porch at the time, and Henry then said to his mother in the presence of Mrs. Sayer: "Yes, you are nasty, and you have got the room stinking now, and if you don't quit it, I am going to throw you out in the yard and let you mess there." To Mrs. Sayer, the testatrix also said that Henry compelled her to make the will.

In addition to what has been said of the testimony of the witnesses mentioned, they and other witnesses testified that Henry G. Brame's treatment of his mother before and after the execution of the will was brutal in the extreme; that his conduct toward her was at all times harsh and cruel; that he was at all times indifferent to her comfort, and, notwithstanding her helplessness, neither he nor his daughter, Vera, would minister to her wants; and, furthermore, that the testatrix during his and his daughter's residence with her manifested her fear of him.

The foregoing uncontradicted evidence and the facts and circumstances attending the preparation and execution of the will, conduced to prove Henry C. Brame's control of the testatrix, his ability to compel of her obedience to his wishes, his full dominion over her will power, and, together with the gross inequality of the disposition made by the will of the testatrix's property, furnish sufficient proof of the undue influence charged, to require submission of the case to the jury. In addition to what has been said, there is an entire absence of evidence tending to show that the testatrix was lacking in affection for her daughter, Mrs. McGee, or that the latter had ever given her cause to exclude her from participating in the distribution of her estate. On the contrary, there is abundant evidence to the effect that the relations between Mrs. McGee and her mother were at all times intimate and affectionate.

Beyond what has been said, it is not to be overlooked that the age of the testatrix, her ill health, complete helplessness and weakened condition of mind, made it easy for one of the strong, dominating personality of her son to subdue her will and control her actions even to the extent of compelling her to do what, if left to her inclination, she would never have done.

As said in McConnell's Exr. v. McConnell, 138 Ky. 783:

"In will cases where the grounds of contest are undue influence and mental incapacity, the evidence is necessarily allowed to take a wide range, and every fact and circumstance that may throw light upon either of these facts is admissible."

In view of the situation presented by the record, we do not hesitate to declare that the giving of the peremptory instruction by the trial court was unauthorized, and that the verdict returned by the jury in obedience thereto was flagrantly against the evidence.

For the reasons indicated, the judgment is reversed, and cause remanded for a new trial consistent with the opinion.