## Lewis, et al. v. Lewis, et al.

(Decided March 10, 1922.)

### Appeal from Gallatin Circuit Court.

1. Deeds—Mental Capacity.—Where a deed is attacked on the ground that the grantor had not sufficient mind to comprehend the nature of the transaction and to protect his rights in executing the deed, the question presented is one of fact to be determined on the evidence introduced.

2. Deeds—Mental Capacity—Annulment—Cancellation.—Mental weakness alone is not sufficient to justify the annulment of a deed of conveyance. Mental incompetency requiring the cancellation of a deed must amount to such infirmity as renders the grantor incapable of comprehending and understanding the subject of the contract, its nature and probable consequences.

3. Deeds—Mental Capacity.—In determining whether the grantor had sufficient mental capacity to execute a deed, the inadequate consideration appearing on the face of the deed should be considered in connection with evidence relative to mental incompetency.

4. Deeds—Mental Capacity—Annulment.—Nineteen years before the execution of a deed the grantor was sued by a brother to recover the land embraced in it, but, after the issues were made up, no steps were taken in the litigation until another brother and an attorney representing the plaintiff in that suit procured the grantor

to deed the land to them, in consideration of the dismissal of the suit and the promise to pay approximately a third of the value of the land. It appeared at that time that the plaintiff in the original suit was an inmate of the county poor house where he had been for four years; that he did not know the attorney was representing him in the suit and did not know that the suit had been dismissed and the deed taken in the name of the attorney and his brother until after the whole transaction was closed. These facts considered in connection with the evidence showing mental incapacity on the part of the grantor require an annulment of the deed.

JOHN H. KLETTE and JOHN L. VEST for appellants.

A. M. BAKER and J. W. CAMMACK for appellees.

OPINION OF THE COURT BY JUDGE MOORMAN—Reversing.

This litigation grows out of a deed of conveyance of March 29, 1919, from Joseph Lewis and his wife, Carrie Lewis, to William Lewis and J. W. Cammack. Four of the six children of Joseph Lewis, one of them being a minor, are seeking a cancellation of the deed on various grounds, only one of which will be considered on this appeal.

In September, 1900, Frank Lewis filed suit in the Gallatin circuit court seeking to recover of Joseph Lewis, his brother, a tract of land in Gallatin county consisting of about 54 acres, on the ground that he was the equitable owner of the land. Joseph Lewis resisted the litigation to the extent of filing answer and putting in issue the claim of his brother. That action was continued on the docket of the Gallatin circuit court, without further steps, until March, 1919, at which time Joseph Lewis and his wife, to whom he had been married only a few months, conveyed the land to William Lewis, a brother of the two litigants, and to J. W. Cammack, in consideration of the dismissal of the Frank Lewis suit and a promise to pay the sum of $1,350.00. The evidence shows that the land was then worth from $3,500.00 to $5,000.00. When the conveyance was made Joseph Lewis was over seventy years of age and was in feeble health. On June 15, 1919, he died.

The main features of the evidence for appellants, relative to the mental capacity of Joseph Lewis on the date of the conveyance, show that, for three or four months before his death, he was physically feeble, and that his

mentality was considerably weakened by reason of his physical condition. He resided at Glencoe, a small town, and in endeavoring to walk about the streets he would lose his way and his neighbors often found him and took him home. At times he would say that he owned property that he did not own, and there was other evidence of mental unsoundness. His physician testified that he was suffering from senility. He met some of his friends and neighbors before the conveyance was made and told them that he was about to lose his farm, and afterwards he met others and wept and told them that his farm had been taken from him. These facts with others evidencing mental incapacity are established beyond question by many of the inhabitants of Glencoe.

For appellees it was proved that the decedent made two trips to Warsaw to arrange a settlement of the suit and the sale of the land; that on each occasion he came alone, driving the distance of ten miles; that in February he bought a small piece of property in Glencoe and secured a loan from a local bank to make a partial payment on it. They also proved by one or two witnesses that at the time the deed was made he appeared to be normal. However, his neighbors and those who saw him most frequently at this period all testified to facts and incidents strongly corroborating the view that he was then suffering from mental deterioration and was incapable of transactions involving property.

The sole issue for decision here is whether or not at the time the deed was executed and delivered the grantor had sufficient mind to comprehend the nature of the transaction and to protect his rights in consummating it. This question is one of fact. (Wathen v. Skaggs, 161 Ky. 600; Herzog v. Gipson, 170 Ky. 325.) These decisions and others on which they are based do not justify the cancellation of a deed on the ground of mental weakness alone, but hold that mental incompetency requiring the annulment of a deed must amount to such infirmity as renders the grantor incapable of comprehending and understanding the subject of the contract, its nature and probable consequences.

With this rule in mind we would not feel justified in sustaining the contention of appellants on the evidence of mental incapacity alone, though that evidence is strongly corroborative of the contention. But the record presents even more convincing proof than that of the tes-

timony mentioned, and that is the established conditions under which the deed was acquired.

The suit of Frank Lewis was filed in 1900 by Lindsay & Botts, a firm of lawyers at Owenton. After Mr. Lindsay's death the firm became Botts & Perry. Some years later Mr. Botts died and Mr. Perry formed a partnership with the appellee, Cammack. During all of that time and apparently for several years after Cammack became a partner of Perry, who is also dead, no steps were taken to conclude the litigation. It appears that the plaintiff in that suit, when the deed in controversy was executed, was an inmate of the county poor house, where he had been for four years, and that he had never pressed the suit. William Lewis, one of the grantees, during those years of his brother's penury, had done nothing to establish the rights claimed by the brother in that litigation. It is shown that Frank Lewis did not know that appellee Cammack was representing him or that the case had been settled or a deed to the land taken in the names of Cammack and William Lewis, until after the closing of the entire transaction. Joseph Lewis, according to one witness, had stated that he would never compromise the case. Without passing on the merits of the original controversy, it must be observed that Joseph Lewis evidently believed in his ability to defeat the suit. Certainly he had never manifested a desire to compromise it. The irrefutable deductions to be drawn from these facts, added to the testimony of the witnesses with reference to mental incapacity, and considered in conjunction with a compromise of the case for a sum approximating a third of the value of the land, inevitably lead to the belief of mental incapacity on the part of Joseph Lewis.

The opinion just expressed is not affected by the fact that in concluding the negotiations and in executing the deed Joseph Lewis was represented by counsel. Nor does it reflect upon counsel's integrity or purpose, for it can readily be seen that his counsel might not have comprehended his mental condition, since the opportunities for observation when the transaction was concluded might well have been limited, and not knowing his real condition might have yielded to his wishes to effect an adjustment of the litigation.

It is said for appellees that the interested parties are put at a great disadvantage in this suit, because, under section 606 of the Civil Code, they were not permitted to testify to the transactions with decedent. If it be con-

ceded that they are unfortunately situated because of the Code provision, it is nevertheless true that the rule of evidence enforced by it is a salutary one and the weakness of their case, if it is weak, cannot be saved by the plea that their evidence was substantial but could not be introduced under the Code provision referred to. Wholly aside from that point of view, it should be noted that there is little testimony from those who had an opportunity to observe the decedent during the last several months of his life, tending to support the contention of appellees as to his soundness of mind, and practically none of it was offered by appellees. The great preponderance of the evidence shows him to have been mentally incompetent, and this, with the conditions referred to, compels the conclusion that he did not possess the requisite mental capacity to understand the nature of the transaction and properly appraise its consequences.

In view of these considerations the judgment is reversed with directions to the court below to cancel the deed and for such further proceedings as are consistent with this opinion.