## Gillock v. Williams, et al.

(Decided May 11, 1923.)

### Appeal from Allen Circuit Court.

1.  Judgment—Testimony and Decree in Suit for Receiver of Grantor's Property Held Not Conclusive as to Incapacity to Make a Deed.— In an action to set aside a deed for mental incapacity, the testimony and decree in a former suit, in which a receiver had been appointed for the grantor's property on the ground of both physical and mental incapacity, were not conclusive that he was mentally incapable of making the deed in controversy, especially where the

chancellor who appointed the receiver was the same judge who subsequently sustained the deed.

2.   Deeds—Grantee, in Whose Custody Physically Infirm' Grantor is Living, has Burden of Sustaining Deed.—Where a grantor is old and physically infirm and is in the custody of the grantee, the burden is on the grantee to show that the conveyance was freely and voluntarily made with a full understanding of its consequences.

3.   Deeds—Mental Capacity Requires Free and Voluntary Act with Understanding of Consequences.—Mental capacity to execute a deed requires the act to be free and voluntary, coupled with an under-' standing of its consequences.

4.   Deeds—Mental Weakness is Not Alone Sufficient to Vitiate Deed.— Mental weakness of the grantor is not sufficient to justify the annulment of the deed if it does not destroy the power to act vol-'untarily and freely and to appraise the consequences of his act.

5.   Deeds—Evidence Held to Show Deed was Not Obtained by Undue Influence.—Evidence that the grantor 'of a deed to his niece was displeased with the actions of some of his heirs, and had always been fond of the niece, and that he went to her home with a proposition to deed his property to her if she would come and live with him, held to show the deed was not obtained by undue influence exerted by the niece.

6.   Appeal and Error—Chancellor's Finding on Issue of Grantor's Capacity Not Disturbed Unless Against Evidence.—The chancellor's finding that a grantor was mentally capable of executing a deed will not be disturbed unless found to be against the evidence.

7.   Deeds—Grantee Held to Have Substantially Performed Condition in Deed.—Where a deed recited the consideration as love and affection and the grantee's agreement to remove to the home of the grantor and care for him there for the rest of his life, proof that the grantee had agreed to the condition and had made arrangements to move to his home, including renovation and refurnishing of the home, and would have moved there on the day grantor died, with evidence that her acts were entirely satisfactory to the grantor, shows substantial compliance with the requirement of the deed, even if it be construed as a condition and not a mere covenant.

8.   Deeds—Not Canceled Because Performance of Inconsequential Condition Has Become Impossible.—Where a grantee has substantially complied with the requirements of a deed, equity will not cancel the deed on the ground that the performance of an inconsequential condition has become impossible.

HARPER & DENTON for appellant.

GILLIAM & GILLIAM for appellee.

(OPINION OF THE COURT BY JUDGE MOORMAN—Affirming.

This action was instituted in the Allen circuit court to set aside a deed to two tracts of land worth about $20,-000.00. The deed was made by R. L. Sears a few days before his death. The grantee is his niece, and the complainant his grandnephew. The court below held that the deed was valid, and the plaintiff has appealed, insisting that on the issue of fact as to the grantor's capacity to convey the finding of the chancellor is erroneous, and that the deed itself contains an unperformed condition which renders it invalid.

Sears was the survivor of three bachelor brothers, who, by hard work and good management, had accumulated a considerable estate that seems to have been held in common by them. On the death of his two brothers the brothers and sisters of appellee asserted a claim to a part of the accumulated property. Litigation followed, but was finally discontinued, the claimants, known in the record as the Lodge heirs, receiving their share of the property as heirs at law of their uncles. In the settlement, which was embodied in a judgment, they released any interest they then had or might thereafter acquire in the estate of R. L. Sears. This left only three heirs to the estate of Sears, one of whom, Leslie Gillock, a brother of appellant, shortly thereafter died. R. L. Sears purchased the land involved in this suit at the sale of the property of Sears Brothers. For some time thereafter he resided on the place. He was a delicate man, and for several months before his death lived with one of his neighbors. On December 31, 1919, he moved to the home of appellee, and on the 20th day of February, 1920, executed and delivered to her the deed in controversy. He died two or three days after making the deed, and appellant immediately instituted this action to cancel it.

The evidence relating to the mental capacity of the grantor is voluminous. He could neither read nor write, and was quaint, if not eccentric. Undoubtedly much of the business carried on by himself and his two brothers, while they were accumulating the partnership property, was conducted by one of the brothers who had received the advantages of a limited education. Nevertheless, R. L. Sears possessed industry and shrewdness, as well as capacity to care for and safeguard his own interest.

An exhaustive discussion of the various features of the evidence is embraced in briefs of counsel. To elaborate all the points made would not elucidate the grounds on which our conclusions are based. We deem it proper, however, to refer to one circumstance which appellant claims conclusively establishes lack of mental capacity to execute the deed. It relates to the testimony of Sears on the hearing of the motion for a receiver in the suit brought by the Lodge heirs. A transcript of that testimony was introduced in evidence, and it shows that on his cross-examination he was in some instances unable to identify the denomination of bills that were handed to him, or to make simple calculations, according to the request of counsel. This testimony is said to have impelled the chancellor to enter an order appointing a receiver for the partnership property, and reciting that R. L. Sears was "physically and mentally incompetent to take charge of and control and convert into money the said estate, or to rent or supervise the sale of the lands belonging to said copartnership."

Waiving the question of the competency of the transcript and order of court, and recognizing their potency, we are still unable to say that they are decisive of the question at issue or, in view of all the evidence, exercise a controlling influence. In the first place, his testimony does not indicate such mental infirmity as rendered him incapable of appraising his property and understanding the consequence of his acts in relation thereto. It does prove that in some instances he failed to identify certain bills that were handed to him, but there was evidence to show that he was an irascible man, was very indignant at what he believed to be the ingratitude of the Lodge heirs, and that he was confused while on the witness stand. The testimony is favorable to appellant's contention, but it is not, in the circumstances, decisive, and particularly is it not so when considered in the light of all the evidence in this case.

The action of the chancellor in appointing a receiver to take charge of the partnership property is not to be regarded as founded alone on mental incapacity, for it will be observed that that reason was coupled with physical incompetence. Besides, R. L. Sears was one of the litigants, and that fact was doubtless considered by the court in deciding whether a receiver should be appointed. If, however, the situation of the parties and their relation to the property may not be regarded as responsive

to appellant's contention as to the effect of the order, there exists another consideration which, in our opinion, is irrefutable; it is that the chancellor who heard the motion for a receivership, and who entered the order, sat in this case, and, after considering the testimony given by Sears in the former case, concluded that the deed in controversy was the free and voluntary act of a capable mind.

The specific questions made by appellant are: That the deed was procured by fraud and undue influence, and also that the grantor was deficient in mental capacity. Subsidiary to these questions, it is contended, and rightly so, that, where a grantor is old and physically infirm and is in the custody of the grantee, the burden is on the grantee to show that the conveyance was freely and voluntarily made, with a full understanding of its consequences. Smith v. Snowden, 96 Ky. 32; Kelly v. Fields, 167 Ky. 796; Huffaker v. Brammer, 193 Ky. 267; Akers, etc. v. Akers, 195 Ky. 461. This rule relates primarily to the burden of proof, and not to the requisite mentality. The latter subject has to do with the grantor's powers of volition and understanding, in respect to which the act must be free and voluntary, coupled with an understanding of its consequences. In determining these questions the mental weakness of the grantor is not conclusive, for, as has often been held, mental weakness alone is not sufficient to justify the annulment of a deed, if it does not amount to such infirmity as to destroy the grantor's power to act voluntarily and freely and to appraise the consequences of his act. Wathen, et al. v. Skaggs, et al., 161 Ky. 600; Herzog, et al. v. Gipson, et al., 170 Ky. 325; and Lewis, et al. v. Lewis, et al., 194 Ky. 172.

Accepting the circumstances of Sears' death as sufficient to cast the burden upon appellee to sustain the validity of the deed—i. e., to show that it was a free and voluntary act made with a rational understanding of its consequences—the question is: Does the proof support the finding of the chancellor on the two points at issue? Treating them together, and without detailing the evidence, it may be observed that Sears was devoted to his niece, and frequently visited her during the latter years of his life. She was always kind to him. He believed that the Lodge heirs had treated him unjustly, and he rarely saw appellant, who manifested little interest in his welfare. To this may be added a purpose often expressed and long entertained—to give this land to appel-

lee.   It is in evidence that when he went to her home he
had then made up his mind to give her the land if she
would move to the home place, to which he was much at-
tached, and live with and care for him.   He was a man
of intractable will, and, according to the weight of the
evidence, there was no impairment of any mental faculty.
Granting, therefore, that by reason of his association with
appellee she was given the opportunity of influencing him,
still the evidence shows that she did not.   And similarly
conceding that there was evidence to the effect that he was
a victim of mental debility, there is also evidence show-
ing that he had ample capacity to make a valid deed.
The chancellor accepted the appellee's evidence.   He
knew the parties and the witnesses, and his finding will
not be disturbed unless found to be against the evidence.
We cannot hold that it is against the evidence.

The second contention made by appellant is that the
deed contains a precedent condition that has failed. The
consideration for the conveyance was love and affection,
and the agreement on the part of appellee to "remove to
the home of the party of the first part and live with him
during the remainder of his life and attend to, care for,
nurse and look after him, do his cooking and washing
and the usual household work, subject to the life estate
and the exclusive and absolute title, control, occupancy
and possession of and by the party of the first part, etc."
Following the granting clause the deed states: "Now, in
consideration of a full compliance with the conditions,
provisions and agreements hereinbefore contained, the
absolute title to the foregoing tracts of land shall vest
in fee in the party of the second part upon the death
of the party of the first part; it being distinctly under-
stood that the party of the first part reserves the exclu-
sive and absolute title, use, control and possession of
the lands hereby conveyed for and during his natural
life."

These provisions, it is argued, constitute a condition
precedent which had not been fulfilled at the time of the
grantor's death, in that the grantee had not moved to
the home of the grantor.   In considering this contention
it should be remembered that the prime motive for the
conveyance was affection.   To that feeling may be traced
the grantor's desire for the society, care and attention
of his niece.   It is true he desired to live in his old home,
but it is not a speculation to say that that condition
played but a small part in his determination to give the

property to appellee. She was willing to gratify his wish and had prepared to move. The house had been renovated, and she had purchased some furnishings for it. The move was to have been made on the day that he died. So far as possible she had fulfilled all of her obligations to his complete satisfaction. In view of these facts we do not consider it necessary to decide whether the language quoted is merely a covenant or amounts to a condition, nor whether, if a condition, it be subsequent or precedent, for in all of its substantial parts her undertaking had been performed. It would have been performed to the letter except for the death of the grantor.

If the substantial parts of a contract have been performed, equity will not cancel it on the ground that the performance of an inconsequential condition has become impossible. This view is not in conflict with Colvin v. Pairpoint, Exor., 9 Ky. Law Rep. 191, for there the gravamen of the condition, that of companionship, personal care and attention, had not been performed, and for that reason the legacy was denied.

It follows from the foregoing that neither of the grounds relied on by appellant can be sustained. The judgment is accordingly affirmed.