## Beatty, et al. v. Caldwell, et al.

(Decided October 13, 1925.)

### Appeal from Owen Circuit Court.

1. Wills—Where there is Any Evidence of Incapacity or Undue Influence, Question is for Jury.—Where there is any evidence of incapacity or undue influence, question is for jury.
2. Wills—Mental Capacity and Undue Inuflence Held Under the Evidence for the Jury.—In a proceeding for the probate of a will, evidence held sufficient to take case to jury on questions of mental incapacity and undue influence.
3. Evidence—In Will Case, Testimony of Nonexpert Witnesses Properly Received.—In proceeding to establish a will and codicil thereto, nonexpert testimony of neighbors and friends as to mental capacity of deceased properly admitted, though some of these witnesses did not state many facts to sustain their opinion, for they all stated some facts, and they were well acquainted with deceased, and had opportunity to observe deceased and form opinion.
4. Wills—Instruction Not Erroneous as Requiring Jury to Find in Favor of Both Wil and Codicil in Order to Find Either Will or Codicil to be Will of Deceased.—Instruction by court on mental incapacity and undue influence held not erroneous or prejudicial to proponent of will as against contention that under instruction jury could not find either the original paper or the codicil to be the will of deceased, unless they found in favor of both papers.
5. Wills—Omission of Court to Instruct that Jury Might have Found in Favor of Will and Against Codicil, or for or Against Both, Not Prejudicial.—Omission of court to instruct that jury might have found in favor of will and against codicil, or for or against both, held not prejudicial, in view of fact that verdict of jury would not have been altered thereby.
6. Wills—Verdict of Jury in Will Case Must be Given Same Effect Under Statutes as in Any Other Civil Case.—Verdict of jury in will case must be given same effect under statute as in any other civil case.
7. Wills—Verdict that Will and Codicil were Not Will of Deceased Held Not Flagrantly Against Evidence.—In will case, where contestants contested will on ground of mental incapacity and undue

influence, finding of jury that will and codicil were not the last will of deceased held not flagrantly against the evidence.

J. L. W. SLAUGHTER and J. W. CAMMACK for appellants.

H. W. ALEXANDER and J. G. VALLANDINGHAM for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Affirming.

W. P. Slaughter died a resident of Owen county on June 9, 1923. After his death two papers purporting to be his will and a codicil thereto were probated in the Owen county court. An appeal was taken from this order to the circuit court. In the circuit court there was a verdict and judgment that the papers were not his will. The propounders appeal.

W. P. Slaughter owned a farm in Owen county worth about $6,000.00, on which he and his son-in-law, K. L. Beatty, lived for four or five years prior to the year 1913. In that year he sold the farm to Beatty and his wife, Artie Beatty, for $6,000.00, two thousand of which was used to pay a mortgage on the place, leaving him a surplus of about $4,000.00. He had then two children, Mrs. Anna Caldwell and Mrs. Artie Beatty. Mrs. Caldwell had one son; Mrs. Beatty had no children. After he sold his farm he continued to live with the Beattys and lent each of his daughters $2,000.00, taking the note of each of them therefor and a mortgage on her land to secure it. It was then agreed between them that neither was to pay any interest, except such as he might need. He obtained a pension of $10 a month as a Confederate soldier, which was paid him regularly until he died. Each of his daughters paid him at one time $25.00 and another time $35.00. He continued to live at the Beattys; Mrs. Caldwell lived adjoining. In January, 1922, Mrs. Beatty was suffering from consumption and he went over to live with the Caldwells and remained there until about the first of October. During this time some bad feeling developed between the Beattys and the Caldwells about the money due him. Mrs. Caldwell's son investigated the record and found no record of any mortgage given to him by the Beattys. He had released his mortgage on the Caldwell land to enable them to make a mortgage to the Reserve Bank and wanted them to give him a second mortgage. As the Caldwells say, the Beattys put him up to this. Mrs. Caldwell, thinking the Beattys had given him no mortgage,

refused to execute a mortgage. She also declined to give a new note bearing interest from the date of the original transaction, because, she says, he told her he had not a scratch of the pen from the Beattys. Thus things ran along until about the first of October, when one morning he appeared at the Beatty house with his clothes and told Mrs. Beatty that Mrs. Caldwell had treated him very grossly, that her son Harry had assaulted him with his fists and that he could not stay there any longer. Mrs. Beatty then called her sister over the telephone and used some harsh language, in consequence of which the sisters never spoke to each other again. On October 30th, or about four weeks after this, he, Beatty and wife went together to the county seat and there had all three of their wills written and signed, but they were not present when his will was written. By his will he left one-fourth of his property to Mrs. Caldwell for life, with the remainder to her son Harry at her death, and the other three-fourths to his daughter, Artie Beatty, for life and the remainder at her death to her husband, K. L. Beatty. He gave this reason in his will for the distinction in amounts willed to his two daughters: "I have for the last nine years lived with my said daughter, Artie Beatty, and her husband, K. L. Beatty, who have boarded and cared for me and been very kind to me, and they have not been compensated therefor by me, and I expect to continue to live with them, and I take this means and manner to compensate them to some extent at least for their trouble and kindness." Previous to this and on September 29,1922, Beatty and wife had executed to him a renewal note for $3,075.00, being the amount due on his original note with interest, less the credits that had been paid. On this note on November 15th, he endorsed a credit of $900.00, and again on December 12th for $1,070.00, saying to the person who made one of the endorsements for him that he had made his will but that sometimes wills are broken. In December Mrs. Caldwell tendered to her father $2,000.00 in cash in full of her note. He said he could not afford to law with his daughter and accepted it. She said that it was agreed that she was not to pay any interest unless he needed it and they had paid all that he needed. On January 4, 1923, Mrs. Beatty died. Her father was quite sick with a cold at the time. Mrs. Caldwell did not come to see them or come to the funeral. She says that she was not notified and did not know that she would be welcome. On January 8th the old man sent for his at-

torney, who was also his cousin and had written the original will; he then executed a codicil to his will by which he revoked the devise to Mrs. Caldwell and her son Harry and left his entire estate to his son-in-law, K. L. Beatty.

It is earnestly insisted that there was not sufficient evidence of undue influence or want of capacity, and that the court should have peremptorily instructed the jury to find the papers to be the will of the deceased. He was seventy-eight years old. Dr. F. F. Adams, a specialist, of Covington, Kentucky, who maintains a private hospital, testified that in 1920 the deceased came to his hospital for treatment and he treated him; that he had a bad stricture, inflammation of the bladder, infection of the prostate gland, high blood pressure, and an examination of the urine showed a chronic case of Bright's disease. He was then suffering from senile dementia or softening of the brain, and had not capacity to dispose of his property according to a fixed purpose of his own. A number of his neighbors and friends, who were not experts, testified that he gradually grew worse from this time until he died, and stated facts showing that he was for several years a childish old man, without any fixed purpose of his own and easily influenced. There was also proof of a number of declarations by the testator that he intended to divide his property equally between his two daughters and of other facts tending to show that the will and codicil were the product of the influence of the Beattys over him.

The rule is that where there is any evidence the question is for the jury, and clearly here there was sufficient evidence to take the case to the jury. But it is earnestly insisted that the testimony of nonexpert witnesses should not have been received. While some of these witnesses did not state many facts to sustain their opinion they all stated some facts, and as they knew him well their testimony was properly admitted, under the rule often laid down by this court:

"We think the true rule, after a thorough research, was reached in Brown v. Commonwealth, 14 Bush 398 (Hines, judge), where it was held that, before admitting the opinion of a nonprofessional witness as to the sanity of the person of whom he is to speak, the court must be satisfied that the witness has had an opportunity, by association and observation, to form such an opinion, and when such oppor-

tunity is shown, the opinion is competent and its admissibility is not dependent on whether or not the witness is able to detail certain specific facts of themselves showing sanity or insanity. The ability of the witness to detail such facts may add very greatly to the weight of the opinion given, but they will not of necessity affect the question of admissibility of the testimony. What is sought is the precise mental condition of the subject, and when we come to compare the merit of the evidence given by the expert, which is admitted to be competent, who testifies upon a given hypothesis, often confusing and misleading, with the evidence of the neighbor and associate, who speaks from actual observation, however unsubstantial and indefinite his facts may appear, we are not prepared to give preference to the former; certainly not to the exclusion of the latter." Newcomb's Exor. v. Newcomb, 96 Ky. 120.

The court gave the jury this instruction:

"The jury is instructed to find the papers of date October 30, 1922, and January 8, 1923, read in evidence, to be the last will of W. P. Slaughter, unless you shall believe from the evidence that at the time of their execution, or the execution of either of them, the said Slaughter was not of sound mind, or that the execution of said papers, or either of them, was procured by undue influence, and if you so believe you should find said paper or papers, not to be the last will of said Slaughter, deceased."

It is earnestly insisted that under this instruction the jury could not find either the original paper or the codicil to be the will of the deceased unless they found in favor of both the papers. But to so understand the instruction would be to give no effect to the pords "said paper;" for, if this was the meaning, this part of the instruction would have read, "and if you so believe you should find said papers not to be the last will of said Slaughter, deceased." The natural effect of the words "said paper or papers" is that they refer to the paper or papers executed when he was of unsound mind or procured by undue influence, as above set out. Plainly this was what the court had in mind, and we cannot believe that any jury would not have so understood; for no jury would reasonably understand that if a man had

made a valid will on the 30th of October and had afterwards, on January 8th, made an invalid codicil revoking the will and otherwise disposing of his estate, the invalidity of the codicil would destroy the validity of the will. If the codicil was invalid, the will would stand. The evidence against the codicil was much stronger than the evidence against the will. The verdict of the jury shows they did not so understand the instruction, for it is in these words: "We, the jury, find that said papers of date October 30, 1922, and January 8, 1923, are not the last will of W. P. Slaughter, deceased." The court should for clearness have added to the instruction these words: "The jury may find for one of the papers and against the other or find for or against both papers in their discretion, under the evidence." But the omission of these words under the facts of the case and all the evidence in no wise prejudiced appellants; for if they had been added the verdict of the jury would have been just what is was.

It is also insisted that the verdict is not sustained by the evidence. But under the statute the verdict of a jury in a will case must be given the same effect as in other civil cases, and it cannot be said that the verdict is flagrantly against the evidence. See Smith's Exor. v. Smith, this day decided.

Judgment affirmed.