## Sandy Hook Bank's Trustee v. Bear.

(Decided Feb. 2, 1934.)

M. C. REDWINE for appellant.
LESTER HOGGE for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This is an appeal from a judgment of the Rowan circuit court, denying appellant the equitable lien it

sought to have adjudged and enforced against appellee's property and dismissing its petition with costs.

The facts as disclosed by the record, upon evidence sharply conflicting as to certain points, appear to be as follows: The appellee, Johnnie Bear (defendant below), in August, 1919, purchased a farm in Elliott county, described in the record as the Vencil farm, for which he agreed to pay some $8,000.

In buying this farm, it is admitted, Bear borrowed from the Sandy Hook Bank the sum of $4,000, with which to make the initial payment on it, and for which amount he executed his note, dated October 17, 1919, payable one year thereafter. For the remainder of the agreed purchase price, he executed to vendor deferred interest-bearing lien notes, payable at the rate of $1,000 a year.

The uncontradicted evidence is that, at the time of his purchase of this Vencil farm, Bear was a man who owned considerable property and whose business standing and responsibility were good; also that, at about this time and shortly following, he sold certain properties for a consideration of some $4,300, and that his wife inherited $1,000, all of which—cash, lien notes, and inheritance—he deposited to his account in the appellant bank. Also it is admitted that in October, 1921, upon becoming dissatisfied with the Vencil farm previously purchased in 1919, Bear sold it for some $7,500, upon which price, he testifies, he received from vendee a down payment of $4,000 and deferred lien notes for the remainder. It appears uncontradicted that he deposited with the appellant bank this cash payment also and left with it for collection these deferred lien notes, which were duly collected by the bank and placed to his credit.

It is further admitted that in the December next following this sale he bought a second farm, described in the record as the Hogge farm, at a price of $3,500, upon which he made a down payment of $1,000, with the money inherited by his wife, and that he also paid the remaining lien notes, aggregating $2,500, out of other private funds, secured by him independently and exclusively of the sale proceeds of the Vencil farm. Bear, in his evidence, very definitely and specifically points out just how these funds, required for the payment of

these lien notes, were raised and paid by him thereon, and positively asserts that no part of the sale proceeds of the Vencil farm was used by him in their payment.

On the other hand, the appellant bank contends, and by its officers testifies, that Bear, before his purchase of the Vencil farm in 1919, arranged with it to secure the $4,000 required for making the cash payment on it, and that it was expressly agreed and understood between the bank and Bear that, in consideration of the bank's lending him this requested amount for his use in purchasing the farm, he would, upon its purchase, execute his note in said amount, payable one year after date, to it, and that he and his wife would further secure its payment by giving the bank a mortgage upon the farm when conveyed him. Both V. H. and M. M. Redwine, officers of, and witnesses for, the bank, testified that, pursuant to such agreement, the bank advanced the money to Bear, which was used by him in the purchase of that farm, but that he thereafter failed and refused to execute it the promised mortgage to secure the $4,000 advanced him. Also they testified that, some two years later, in October, 1921, Bear, becoming dissatisfied with the Vencil farm, again came to the bank and sought its consent to his selling this farm and using its sale proceeds for purchasing another farm, and that the bank then agreed to his keeping the sale proceeds of this Vencil farm, claimed then subject to its equitable lien, and using it for purchasing a second farm, upon the condition of his agreeing to execute the bank a mortgage upon such farm as he might purchase with such funds or have the deed taken thereto recite a lien given appellant upon the land thus bought to secure it in the payment of this $4,000 advancement made Bear, upon his earlier purchase of the Vencil farm.

Appellant contends that, pursuant to such claimed second agreement, Bear, in the December following, purchased what is described in the record as the Hogge farm, with the sale proceeds of the Vencil farm; while, on the other hand, Bear testifies that he bought the Hogge farm without having any agreement whatever with the appellant as to its purchase and without using any part of the Vencil farm sale proceeds in buying it.

It is admitted that appellee's $4,000 note was executed the bank in 1919 for the loan made him for buying the Vencil farm, and that it was annually thereafter

612

renewed, with interest, six times, or until 1925, during which period the appellee carried a deposit account with appellant which at times amounted to as much as $3,500 or more.

In 1925, upon the bank's affairs becoming badly involved, it was turned over to Wick Strother, a deputy banking commissioner, for liquidating, when he, as such, filed suit against Bear in the Rowan circuit court upon this note, recovering judgment against him thereon for its amount of $4,988.76, interest and costs. This judgment, it appears, remains now in full force and effect, it having never been appealed from, modified, or vacated.

Upon Strother's liquidation of the bank (and payment of all its depositors in full), its assets and control were turned back to it, when G. W. Prichard was appointed by it as trustee for its continuing operation and management. In February, 1929, G. W. Prichard, as such trustee, filed this suit in equity upon this same note against Bear, by his petition alleging the facts as hereinabove testified to by appellant's witnesses, and averring that there was thereby created, in favor of the bank, an equitable lien upon defendant Bear's farm, which it was entitled to have adjudged and enforced against it for the satisfaction of its note sued on, and for which relief it prayed.

Bear answered, denying the allegations of the petition, and further pleaded, as later testified, that no part of the funds derived from the sale of the Vencil farm had been used in the purchase by him of the Hogge farm (which he continues to own and against which plaintiff seeks to assert its alleged equitable lien), and further denied that he had ever made the alleged, or any, agreement with the appellant when originally securing from it the $4,000 loan—or at any time—to give it a mortgage upon the farm purchased in part therewith, or that he had later asked appellant's consent to his sale of the Vencil farm, or to his use of any part of its sale proceeds in the purchase of the Hogge farm, or had agreed that its alleged equitable lien claimed against the Vencil farm, or its sale proceeds, should be transferred to or imposed upon the later purchased Hogge farm, or that for such or any purpose he would give it a mortgage or other lien thereon, securing it in the payment of such earlier loan made him, but states that same was made only as a personal loan to him.

Following pleadings were filed, making up the issues, and, proof being taken, the cause was submitted for final judgment, when the court decreed that plaintiff's petition be dismissed and that it take nothing thereby.

From this judgment, refusing to allow or enforce plaintiff's alleged equitable lien and in dismissing its petition, it prosecutes this appeal.

The question, therefore, presented upon this record for our review is: Was there created, under the facts here shown by the evidence, an equitable lien in favor of the appellant upon appellee's farm for the payment of this $4,000 note, executed by Bear to the appellant bank in 1919, for money which, it is admitted, he used in the purchase of the Vencil farm?

While it may be admitted that, very generally, under the doctrine of equitable liens, one advancing or lending money to a purchaser, upon his request and for the express purpose of buying real estate under an oral agreement for a mortgage on said purchased property as security for the loan's repayment—that he in such case is to be treated, not as a volunteer, but rather is held, according to the dictates of equity and good conscience, to be entitled to an equitable lien which can be enforced against the property as security for the payment of the money so advanced, where the vendee refuses to perform his agreement. Such an equitable end is often justly reached in such case through applying to such a situation the doctrine of subrogation; the equitable principle of which is in 25 R. C. L. 1313, thus stated:

> "The doctrine of subrogation * * * does not owe its origin to statute or custom, but it is a creature of courts of equity, having for its basis the doing of complete and perfect justice between the parties without regard to form. * * * It rests upon the maxim that no one shall be enriched at another's loss and may be invoked wherever justice demands its application, in opposition to the technical rules of law which liberate securities with the extinguishment of the original debt."

Also see Case v. Greer, 229 Ky. 823, 18 S. W. (2d) 288.

In 18 A. L. R. 1100, the learned annotator of that valuable compilation, in discussing this equitable prin-

ciple and wholesome rule announced by the courts as to the doctrine of equitable liens in annotating the case of Newman v. Newman, 103 Ohio St. 230, 133 N. E. 70, there reported, states:

> "The cases are not harmonious on the question whether one who advances money to buy real estate, under an oral agreement for a mortgage on the property as security, is entitled to subrogation to the vendor's lien or is entitled to some form of equitable lien or mortgage which can be enforced against the property, where the vendee refuses to carry out the agreement for a mortgage."

There is further collated and cited in the annotations many cases of sister states thus applying and supporting the doctrine of equitable liens in those cases where "the borrower was bound in equity and good conscience to performance on his part; that his interest in the property must be held answerable for the same, to the same extent, as if the mortgage had been given according to the agreement." To such effect are the cited cases of Cole v. Cole, 41 Md. 301; Hughes v. Mullaney, 92 Minn. 485, 100 N. W. 217; Murphree v. Countiss, 58 Miss. 712; Sprague v. Cochran, 144 N. Y. 104, 38 N. E. 1000, the doctrine of which is also approved and invoked in the case of Case v. Greer, supra.

In this case the defendants borrowed of Case $400 to pay on the purchase price of land, agreeing to execute a mortgage thereon to secure the payment of the loan which they later refused to perform. Upon suit filed to enforce its claimed lien against the purchased land, the court held that the only issue in the case presented as to this claim to an equitable lien on the land was, "whether or not the appellants agreed to execute a mortgage on the land to secure the indebtedness and whether or not it was paid."

However, while it appears from these cited decisions of foreign courts, as well as from some of this court, as in the quoted case of Case v. Greer, supra, upon this question, that this doctrine may be regarded as approved by this court, in favor of the right to a lien or equitable mortgage, in one lending or advancing money to a purchaser under such circumstances, where an agreement is made and exists therefor, we are not upon this record here before us called upon to either

approve or apply this equitable principle, nor are we to be understood as here passing upon this question, for the reason it is manifest that the learned chancellor, in holding adversely to appellant's claim to an equitable lien—even assuming arguendo that he found as a fact from the evidence that the appellant bank had made the advancement to the appellee of $4,000, with which to buy the Vencil farm, under an agreement to give it a mortgage thereon as security for the repayment of its loan—it is manifest that it did also find from the evidence that the sale proceeds of the Vencil farm, whether or not they were impressed with an equitable lien in favor of the bank, could not be traced into nor were they later expended by Bear in the purchase of the Hogge farm, against which appellant now claims and seeks to here assert such equitable lien, as transferred thereto.

We take it that it may be conceded that clearly appellant can assert neither claim nor any lien against this farm of the appellee unless he is able to trace funds, impressed with a lien in its favor, as going into or used by Bear in the purchase of this farm. It is therefore our opinion that, regardless of the other claims and counterclaims here made upon other points and grounds by the parties, their detailed discussion and disposition is here uncalled for, in view of our conclusion that the one material, pivotal, and decisive question upon which the parties' rights upon this appeal must turn is: Were funds, impressed with an equitable lien in favor of the appellant, used by appellee in his purchase of this Hogge farm, upon which appellant seeks to impress its claimed equitable lien?

The chancellor's finding, from the evidence upon this question, being adverse to appellant's claim, his decree dismissing plaintiff's petition and adjudging it no right of recovery against the defendant thereunder, we conclude, is not to be disturbed, as it must be interpreted as manifestly based upon his finding that appellant failed to show by its proof that the defendant used funds in paying for the Hogge farm which were impressed with any lien in favor of appellant. From this it follows that, there being ample evidence in the record to sustain and fully support such finding by the chancellor, we are without authority, upon the applicable and

controlling rule in such case, to disturb his judgment based thereon.

Therefore the judgment is affirmed.