## Hutchins et al. v. Foley et al.

(Decided Dec. 14, 1937.)

LEWIS L. WALKER for appellants.
ROBINSON & KAUFFMAN for appellees.

OPINION OF THE COURT BY JUDGE BAIRD—Affirming.

Malissa Hutchins and Mose Hutchins, her husband, appeal from a judgment setting aside and holding for naught a deed made to Malissa Hutchins by P. E. Foley, her father. They insist: (1) That because appellees took the deposition of Malissa Hutchins as on cross-examination before taking the deposition of appellees, that fact precluded the introduction of appellees as witnesses in chief on the trial of the action, and, (2) that the judgment was not supported by the weight of the evidence.

Section 606, subsection 3, Civil Code of Practice, provides:

"No person shall testify for himself, in chief, in an ordinary action, after introducing other testimony for himself, in chief; nor in an equitable action, after taking other testimony for himself in chief."

Subsection 8 of the same section provides:

"A party may be examined as if under cross-examination at the instance of the adverse party, either orally or by deposition as any other witness; but the party calling for such examination shall not be concluded thereby, but may rebut it by counter testimony."

It will be noted that in an ordinary action the testimony in chief of the parties to an action cannot be used after the introduction of other testimony, nor in an equitable action after the taking of other testimony for himself, in chief. It was not error, after taking the deposition of Malissa Hutchins as on cross-examination, to then take the depositions of the parties. But even if an error, we do not consider the alleged error grounds alone for reversal. In the case of Barkley v. Bradford et al., 100 Ky. 304, 38 S. W. 432, 18 Ky. Law Rep. 725, we said:

"But that is a rule of practice, not of right; and, if a party appealing has not been prejudiced by violation of it, this court would not, upon that ground alone, reverse a judgment in other respects regular and proper."

Is the judgment sustained upon the depositions of the other witnesses, excluding the testimony of the parties? We note further that exceptions were filed by appellants to the testimony of the parties in interest and sustained, mainly because their testimony was in violation of section 606, subsection 2 (as amended by Acts 1932, c. 59), which provides that the parties in interest shall not testify for himself concerning any verbal statement of, or any transaction with, or any act done, or omitted to be done by, one who is dead, when the testimony is offered. So the question arises, was the evidence of the other witnesses sufficient and of such probative value as to justify the judgment of the chancellor?

The action is based entirely upon four grounds: (1) That the mind of P. E. Foley was unsound at the time the deed was executed, to such an extent that he did not comprehend the effect of his act; (2) on account of the unsoundness of his mind, he was unduly influenced by the sister of appellant to such an extent that the execution of the deed was not his free act and deed; (3) that granting that the deed was made, and not from undue influence and when of sound mind and with full and complete understanding and knowledge of his act, still (4) it was not delivered, as required by law, to the grantee, Malissa Hutchins.

It is an established rule of law that the testimony of laymen, such as neighbors and freinds, as to the mental capacity of P. E. Foley, and their opinions concerning his mind, are admissible evidence, where the witnesses were well acquainted with him and had an opportunity to observe and notice his actions and doings and to form an opinion. Beatty v. Caldwell, 210 Ky. 559, 276 S. W. 547. It is also a rule that, where the facts testified to by laymen, who are not expert witnesses, are not sufficient to base an opinion of his unsoundness of mind, then such testimony is not sufficient to establish that fact. Schrodt's Ex'r v. Schrodt, 181 Ky. 174, 203 S. W. 1051; Bodine et al. v. Bodine, 241 Ky. 706, 44 S. W. (2d) 840.

The evidence of lay witnesses must be based upon

facts and circumstances shown by them sufficient to constitute evidence of mental incapacity upon the part of Mr. Foley, the maker of the deed. Their individual opinions without those facts are not evidence upon that question. Moran's Ex'r v. Moran, 233 Ky. 526, 26 S. W. (2d) 565. In a case of this character, the chancellor's finding is always resolved in favor of his conclusion, and, where substantially supported by the evidence, will not be disturbed. Henson et al. v. Jones et al., 247 Ky. 465, 57 S. W. (2d) 498, 501. Where there is ample evidence to sustain the chancellor's finding, this court will not set aside the judgment. Sandy Hook Bank's Trustee v. Bear, 252 Ky. 609, 67 S. W. (2d) 972. There may exist in the minds of this court a doubt as to the soundness of the chancellor's conclusion. However, such doubt is always resolved in favor of the judgment below. Mortgage Union of Penn v. King et al., 245 Ky. 691, 54 S. W. (2d) 49.

The burden of proving undue influence is always upon the party charging it. However, it is never greater than the duty of establishing it by the weight of the evidence. McGee v. Brame, 176 Ky. 302, 195 S. W. 473; Johnson v. Stivers, 95 Ky. 128, 23 S. W. 957.

In Henson et al. v. Jones et al., supra, we said:

"To set aside a deed on the ground of mental incapacity, it is not sufficient to show that the grantor's powers of mind and body were impaired by age, but there must be evidence from which it is made to appear that his infirmity of mind was so great as to render him incapable of knowing or understanding the nature, meaning, and consequence of the transaction. Gillock v. Williams, 199 Ky. 169, 250 S. W. 836; Chrisman v. Quick, 174 Ky. 845, 193 S. W. 13; Wathens v. Skaggs, 161 Ky. 600, 171 S. W. 193; Lewis v. Lewis, 194 Ky. 172, 238 S. W. 410."

In the instant case the evidence of no single witness is sufficient to support the chancellor's finding, but when we view the record as a whole and consider each witness and his statement, and the facts and circumstances in what they said in relation to all others, there is a sufficient and substantial basis for the judgment of the chancellor.

The undisputed facts are, that P. E. Foley at the time of the execution of the deed was more than 97

years of age. He was very feeble, unable to walk without assistance, suffering from a fractured hip, confined entirely to his room and bed except when put in a chair or moved about by the assistance of others. The evidence is to the effect that on August 9, 1928, when he was able to look after his affairs, he executed a will, giving to each of his nine children, including Malissa Hutchins, the appellant, the tract of land of 90 acres, in equal parts, that he is alleged to have deeded to her. His will specifically provided that his nine children could not convey their portion of the land to anyone except to each other; manifesting, at that time, his great desire that his real estate should be owned in equal parts and controlled by his nine children. His wife died February 9, 1928, a short time before his will was made in 1928, at the ripe age of 86 years. Up to her death they lived upon the land. After her death he lived alone. Appellants and their family at that time were living in the village of Wallacetown in Madison county, and engaged in the goods business. It became necessary to dispose of their stock of goods, which they did, and to seek another place to live. Their father was then alone at his home. They concluded to make arrangements to move to his home and live with him, which they did do in the year 1928. He was then about 90 years old. It is significant that, before moving to his home, they obtained consent of his children, the appellees in this action. It was agreed that such an arrangement was satisfactory to all of the children before the move was made. Appellants had very little property. They owned no home, unless it was a small lot, but where situated is not made known. There was no residence on it. They moved upon and took charge of their father's farm of 90 acres and his livestock and tools. They cultivated it and applied to their own use and the use of their family, all of the proceeds made on it, most of the time, until his death. Later on, the residence in which they were all living burned. It then became necessary to build another residence. On account of the age and mental condition of P. E. Foley, his two sons, S. R. and Jake Foley, took charge of the building and erection of the new residence. After it was erected, appellants and their family, together with their father, moved into it, and remained there together until his death. A short time after they had moved into the new residence, P. E. Foley fell from his bed and fractured his hip and became unable to walk.

thereafter. His daughter, the appellant Malissa Hutchins, performed her filial duty in looking after and caring for her father. He was evidently a charge upon her time and attention on account of his age and infirmities. No charge was made for the use of the farm after that time. All of the crops and income of the farm was appropriated by Malissa Hutchins and her family. For these services, the evidence fails to show that she ever expected or demanded any pay or remuneration, other than to live upon and use and apply to her own use, and that of her family, the proceeds of the farm and the home. There is no evidence that her father, if mentally able to comprehend the situation, ever at any time expected to pay her for the services, other than what she was receiving. In his young and active days, he had been a minister of the gospel in the Baptist Church; was quite active in all the undertakings that pertained to the morals of the community. However, after he had reached less than 3 years of the century mark and while decrepit and according to natural laws, weak in mind, and, from the evidence of many witnesses, feeble in body, as well as mind, Lida Moore, a sister of appellant, all at once became extremely solicitous of the interest of appellant and her family; and in his decrepit condition and at a time when he was unable to walk or care for himself, she suggested to him that he make provision for her sister, Malissa Hutchins, and family. In her testimony she stated that in answer to her suggestion he stated "that he was confined to his chair, could not get up, could not do anything" and that was all that was said; but, later she had another conversation. She states that he at that time named it, himself; said "that he made a will," but wanted "Sister Lissa to have the farm," because she, her husband, and children had been good to him, and that he gave her instructions at that time to have a deed prepared, but he was to hold it his lifetime; that at his death it "was to go to Lissa," meaning Mrs. Hutchins. He then told her to have the deed prepared. She then went to an attorney's office; had him to prepare the deed. There is no evidence that Mr. Foley at any time ever suggested or mentioned to any person that he wanted or desired his daughter Malissa Hutchins to have any more of his estate than provided by the will; nor is there any evidence that Mrs. Hutchins demanded or expected any more. The deed was prepared by the attorney without consulting with Mr. Foley or anyone except Mrs. Moore. After the deed

was prepared by the attorney selected by Mrs. Moore, one of Mrs. Hutchins' sons took it to their home and there it remained for a week or more. He never at any time suggested, of his own will, that he wanted to sign or acknowledge it or made any inquiry about the deed. However, later on, Mrs. Moore, without being required to do so, came to her father's home again and suggested to him that the deed should be executed before a notary public; told him who to get and what to do and his answer was always, she says, "Yes." After the deed was executed, it was kept a profound secret both by Mrs. Moore and Mrs. Hutchins, even from her own sons and daughters, who lived in the house with her. Mrs. Moore told it to no one. It is true W. B. Roop, the notary public, and Otis Good, who witnessed the signature, in their evidence stated that Mr. Foley was given the deed; did not speak audibly to anyone, but apparently seemed to read it after taking it in his hands, and that his eyes seemed to move up and down the paper. When asked by the notary whether he acknowledged the deed or not, nodded his head, but said nothing. This is, in substance, the evidence concerning the execution of the deed by Mr. Foley. It is somewhat significant that at no time during the execution of the deed, or after it was executed, did Mr. Foley or Mrs. Moore, or anyone else, refer to it. Under those facts, we are not satisfied that the execution and acknowledgment of the deed was fully understood and approved by Mr. Foley. This was less than 3 months of his demise. It was further in evidence by a number of witnesses, who on election day, in November, 1935, a little more than 2 months before the deed was executed, saw him as he was carried to the election polls; at that time he did not know his friends and neighbors; was unable to recognize his friends and acquaintances and especially the election officers; was unable to understand after an extreme effort on the part of the election officers, as well as his own son, who was present, the local option issue that was being voted upon at that time, and was unable to understand anything, except one witness stated that he said he wanted to vote the Republican ticket. Other witnesses stated differently and said that when he was asked the question as to how he wanted to vote, failed to answer, but was told by his son or others present that he wanted to vote the Republican ticket. He was unable to understand, although he had been in his better days an opponent of the whisky traffic, which was an issue at that election. He

could not be made to understand what it all meant. A number of witnesses stated on that occasion that on account of his acts and what they saw of him, his mind was unsound. It must not be overlooked that in less than 2 months from that time this deed was executed, placing the title to the 90 acres of land in appellant, which he 9 years before had given to all of his children in equal parts by his will. The evidence is to the effect by appellant, herself, on cross-examination, that the land was of the value at the time the deed was made of $5,-000; and, by other witnesses, of the value of $7,000. It is hardly reasonable that the father, had his mind been sound, and had he understood fully what he was doing, and there being no influence of others causing him to do otherwise, would have given his daughter, for services for which she did not expect pay, all the land that he owned. On the question of the condition of the soundness of his mind for many months immediately before the execution of the deed, a number of witnesses testified, neighbors and friends (to give their names and their testimony in full is unnecessary and uncalled for), that they had known Mr. Foley for many years when he was younger; that his mind was always clear and good; that at all times he knew them and was very conversational, but, since reaching his extreme age and during his declining years, his mind failed and became unsound; that he was not competent or able to make the deed or attend to business in any way. On the other hand, many witnesses, testifying for appellants, testified that they knew him well; that his mind was good up to his death and that he had sufficient mind to make the deed. From this evidence, as well as other evidence, we have found in the record, the mind of the court is left in doubt to such an extent that we will not disturb the judgment of the chancellor. The evidence in the record as to the delivery of the deed is not clear or satisfactory to the court. The chancellor was on the ground, no doubt knew the witnesses, and was familiar with the surroundings and circumstances, and was thereby better able to pass upon the credibility of the witnesses than this court. The testimony was contradictory and conflicting to such an extent that the judgment of the chancellor, especially with the doubt we have in our minds, should not be disturbed.

Wherefore, the judgment is affirmed.