CASE 104—PETITION EQUITY—FEBRUARY 26.

100     745
128     466

Louisville & Nashville R. R. Co. v. Eakins, &c.

APPEAL FROM BARREN CIRCUIT COURT.

1. APPOINTMENT OF RECEIVER—LIENS—INTERVENING EQUITY.—In an action by the holders of bonds of a railroad company for the appointment of a receiver, and to take the property out of the hands of a lessee, it appearing that the deed of trust executed to secure the bond-holders was not finally acknowledged until the 29th of September, 1886, while the lease to the lessee was executed on the 15th of September, 1886, the lessee had an intervening equity prior to the rights of the bond-holders, and is entitled to remain in possession under the lease.

2. TRUSTS.—The fact that a trust company who was made the trustee in the deed, has dissolved and gone out of business, will not prevent the bond-holders, for whose benefit the deed was made, from maintaining a suit to foreclose, as equity will not permit a trust to fail for lack of a trustee.

3. SAME.—The provision in a deed of trust that the trustee shall be

entitled to a receivership of the rents, issues and profits of the company during the pendency of a foreclosure suit, can not be so construed as to affect the rights of parties holding intervening equities, even if an agreement providing that one party to a contract shall be entitled to a particular remedy can be construed into taking away from the chancellor the discretion vested in him by sections 298 and 299 of the Civil Code.

4. BOND-HOLDERS—REMEDY.—The remedy of the bond-holders as regards the charges of extravagance and mismanagement by the lessee, would be by a suit for an accounting, and not by an application for the appointment of a receiver.

J. A. MITCHELL AND WALKER D. HINES FOR APPELLANT.

1. The special demurrer should have been sustained, because, under the terms of the deed of trust, the trustee only had the authority to enforce the provisions of the deed. And no reason is shown why another trustee had not been selected by the bondholders in place of the one which had gone out of business. In any event, all of the bondholders were necessary parties.

2. Under the provisions of sections 2487 and 2488, Kentucky Statutes, appellant had a lien for its claim for operating the Mammoth Cave R. R., and its lease having been executed before the deed of trust under which appellees claim, it had a prior and superior equity to that of appellees. (Douglas v. Cline, 12 Bush, 622; Bridge Co. v. Douglas, 12 Bush, 707.)

The appellees were not entitled to the receiver under the provisions of section 298 of the Civil Code, because the property involved was in no danger of being lost, removed or materially injured; nor under section 299, because the action was not instituted by the mortgagee, and because appellant had an intervening equity. But even if the mortgagee had brought the suit, it could not be maintained under section 299, because that section is clearly intended to apply to cases only where the property is in the possession of the mortgagor, or under his control.

3. But the receiver should not have been appointed in any event, because the evidence shows appellant could and did operate it cheaper than a receiver could, especially as rolling stock would have had to be bought or rented by him, there being none owned by the company.

4. The effect of the order appointing the receiver was to, upon a preliminary hearing, oust appellant from possession of property it held under a lease prior in date and right to the mortgage, under which appellees claim; to cancel the lease, which was

in no way attacked; and to stop an economical management of the road, and inaugurate one which promises to be much more expensive. Such orders should be made by a chancellor, if at all, with great care and caution. (High on Receivers, secs. 3, 7, 24, 265.)

5. It stands admitted in the pleadings that appellant's lease was executed prior to the mortgage under which appellees claim, and with their full knowledge and assent, and that the rights of the appellees under the mortgage were subject to the lease.

6. While it is true the mortgage lien attached to the road as it was constructed, it was only by virtue of equitable principles, and a court of equity would not have enforced the mortgage to the detriment of the superior equity of appellant acquired under its lease.

EDWARD W. HINES for appellees.

1. The contract for a lease bears date September 15, 1886, but the writing itself shows that the thing to be leased was not then in existence, and shows that the lease was not to begin until the completion of the road and was to run for twenty-five years from that date. The mortgage lien, however, attached to each part of the road as it was constructed, and existed upon the whole road the moment of its completion, and was on record when appellant entered under its lease. Under such circumstances a court of equity should not hold the rights of the lessee superior to those of the mortgagees, whose money created the road, and whose mortgage was on record before the construction of it was begun.

2. The fact that the mortgagees assented to the lease, does not imply that they agreed to wait until its expiration before proceeding to enforce their lien if there was default in the payment of interest, and especially when it appears that the lessee was operating the road at a loss and claiming a lien on the road for the losses which were continually increasing, whereby the security of the mortgagees was gradually diminishing. Besides, the issues in the pleadings are not yet made up, and the averment that the mortgagees so assented is one of the issues to be yet determined.

3. The trustee acknowledged the instrument on the 31st day of August, 1886, and it must be presumed that it was executed as early as that date, especially as the clerk's certificate bearing date the 29th of September, 1886, does not state that the mortgagor's acknowledgement was taken on that day. These facts are at least sufficient to create an equity in the mortgagee, and

the court.did not abuse its discretion in appointing the receiver, because the instrument itself provides for the receivership, pending the action to enforce the lien.

4. The receivership being expressly provided for by contract, the general rules governing the appointment of receivers do not apply, and the chancellor can not be said to have abused his discretion; and having appointed him notwithstanding the possession of the lessee, this court will not interfere, the case being one in which the Code expressly authorizes the appointment. (High on Receivers, sec. 677; Douglas v. Cline, 12 Bush, 608; Harman v. K., C. I. & D. Co , 15 Ky. L. R., 12; Woodward v. Woodward, 17 Ky. L. R., 464.)

5. There is nothing in the record to show the special demurrer was ever filed, or that appellant ever asked the court to act upon it.

But considering it a part of the record, it should have been overruled, because the new trustee, if appointed, under the terms of the instrument would have had no discretion as to the bringing of the suit, but would have been compelled to do so upon the application of the plaintiffs, who were a majority of the bond-holders; and to say that they could not, in their own names, do what they could have compelled him to do, would be sacrificing substance to form. The minority bond-holders had every protection they would have had if the trustee had brought the suit. (Galveston, &c., R. Co. v. Cowdrey, 11 Wall., 459.)

I. H. GOODNIGHT OF COUNSEL ON SAME SIDE.

I. H. GOODNIGHT AND E. W. HINES IN PETITION FOR REHEARING.

1. The execution of the mortgage by the grantee was on the 31st day of August, 1886, and its delivery is presumed to have been made on that date. The acknowledgement of a deed or mortgage is not necessary to the complete execution of the instrument, its only object or effect being to make the instrument recordable. (Ford v. Gregory, 10 B. M., 180.)

2. Upon the application for the appointment of a receiver, pending the action, the allegations of defendant's answer ought not to be taken as true.

JUDGE DuRELLE. DELIVERED THE OPINION OF THE COURT.

This is an appeal from an order of the Barren Circuit Court appointing a receiver of the property of the Mammoth Cave Railroad Company and taking the road out of the hands of the Louisville & Nashville

Railroad Company, which was operating it as lessee. The order was made on the application of the holders of certain bonds of the Mammoth Cave R. R. Co.

The petition alleges the execution of the lease by the Mammoth Cave R. R. Co. to the L. & N. R. R. Co. on September 15, 1886. By this lease, after a recital of the mutual benefits to be obtained by the respective parties thereto, the road was leased to the second party for a period of twenty-five years from its completion, the first party agreeing to build the road so as to admit of its operation with reasonable safety and economy, and the second party agreeing to take possession thereof "and furnish the necessary rolling stock without rent, and other material and means therefor, and to operate said railroad, and furnish the officers thereof monthly statements of the earnings and expenses, and after deducting the actual expenses necessary in operating and maintaining the said railroad and the engines and rolling stock needed therefor, to pay over quarterly to first party the net earnings arising from the operation of the said Mammoth Cave railroad. No part of the main office expenses of the second party were to be charged to the operating expenses of the first party. There were a number of other provisions in the lease, as to rates of transportation, and looking to the protection of both parties against competiton.

The petition further avers that on September 1, 1886, in order to raise money with which to build the road, the Mammoth Cave R. R. Co. executed a deed of trust

to a Nashville trust company (which has since dissolved and gone out of business), to secure the payment of $100,000.00 of coupon bonds dated September 1, 1886, and payable twenty-five years after date.   Provision is made in the deed of trust (a copy of which is attached to the petition and asked to be made a part thereof) that on default for three months after demand in the payment of interest the principal shall at the option of the holders of a majority in amount of the bonds become forthwith due.   Provision is also made for the creation of a sinking fund out of the income of the road, and for the payment of all taxes by the Mammoth Cave R. R. Co.   Default for about seven years after demand in payment of interest is alleged, as well as failure to provide a sinking fund or to pay taxes.   It is not claimed, however, that any action has been taken to cause the precipitation of the maturity of the principal of the bonds.

It is further alleged that the Mammoth Cave R. R. Co. is insolvent, unable to pay its floating debts, its bonds or the interest thereon, and is in peril of the breaking up and destruction of its business; that the property embraced by the mortgage will be inadequate to pay the bonds and interest; that its business is decreasing, and that it has nothing with which to pay the principal or interest, and can not borrow; that since the possession of the L. & N. R. R. Co. it has never paid the Mammoth Cave R. R. Co. any net earnings sufficient to pay semi-annual interest; that its monthly statements usually show actual expenses in excess of

·earnings and that the deficit has grown until the L.
& N. R. R. Co. claims a large amount against the Mammoth Cave R. R. Co. as a balance due for operating
expenses, in excess of all receipts; that this balance
is growing rapidly and the Cave Company's ability to
pay continually diminished; and that the taxes for
1894 have not been paid and a sale of the property
has been ordered to pay same.

It is charged that if the property were properly and
frugally managed it would yield a considerable net
income over running expenses, but that it is in the
hands of parties inimical to the interests of the bond-
holders; that it is likely the L. & N. R. R. Co. will as-
sert a lien for its claim for operating expenses, superior
to the lien of the bondholders.

On account of the dissolution of the trustee and the
fact that no successor had been appointed appellees
asked to be allowed to proceed in their own right. Two
holders of bonds are made parties defendant.

The suit is brought by certain persons claiming to
hold $58,000.00 of the bonds.   In the body of the peti-
tion they pray judgment for the amount of their unpaid
coupons and for a sale of the property to pay the
amount,   but   nowhere in the petition is there any
prayer for a sale of the property to pay the bonds
except as it may be implied from the averment that
the rights of the parties in interest can not be protected
otherwise than by a judicial sale of the premises and
· property covered by the mortgage.

The deed of trust does not include the rents, profits,

or income of the road, though providing that in case
of default the trustee may, on the request of the hold-
ers of a majority of the stock, take possession of and
operate the road, and receive all tolls, charges, income
and revenue of the property.   It further provides that
in the event of such default and demand, the trustees,
instead of taking possession and selling under adver-
tisement, may proceed by suit to enforce payment and
foreclose the mortgage, and shall be entitled to a re-
ceivership of the property and the rents, issues and
profits thereof, during the pendency of the suit.

It may be observed here that while the deed of trust
was acknowledged on August 31, 1886, by the trustee,
the certificate of acknowledgment by the Mammoth
Cave R. R. Co., is dated September 29, after the date
of the lease to the L. & N. R. R. Co.   Upon the hear-
ing of the motion for a receiver the testimony of J.
Hill Eakins was taken on behalf of the appellees, he
being one of the appellees and also vice president and
secretary of the Mammoth Cave R. R. Co.   The answer
of that company was also read as evidence.   On the
part of the appellants there were read the affidavit
of Mr. Smith, the president of the L. & N. R. R. Co.,
and its answer, counter-claim and cross-petition.   In
the answer are included a general and three special
demurrers, one of the special demurrers being based
upon the theory that the trustee of the deed of trust
alone has the right to bring and prosecute an action
for the enforcement of the mortgage lien, and another
upon the ground that there is a defect of parties de-

fendant apparent on the face of the petition, in that the bondholders other than the plaintiffs are not made parties. The answer, not waiving the demurrers, denies most of the affirmative allegations of the petition, and avers that the execution of the mortgage was not completed until the 29th day of September, 1886, on which day it was acknowledged by the Mammoth Cave R. R. Co., through its president, R. H. Lacey, and on said day filed for record and recorded in the clerk's office.

It is further averred that while the bonds bear date September 1, 1886, no bonds were issued or sold on that day, nor until long after September 15th. It is further averred that the contract of lease was entered into, executed and delivered by the parties thereto at the urgent request of the Mammoth Cave R. R. Co., and with the knowledge and earnest assent of the appellees. It further avers that the road has been operated in as prudent and economical manner as possible and sets up a claim for nearly $5,000 deficit in the receipts above the actual expenses of operation, and claims a superior lien therefor. Both the answer and the affidavit of Mr. Smith allege that the independent operation of the road would be much less convenient and more expensive than its operation by the L. & N. R. R. Co., and would result in a decrease of the gross revenues.

In Mr. Lacey's testimony in chief and in rebuttal certain statements are made as to the manner of keeping the accounts by the L. & N. R. R. Co., tending, if com-

petent, to show that said accounts are not kept upon a proper basis and that the expense of operation by the Mammoth Cave R. R. Co. is thereby made higher than it should be.

Upon the hearing the lower court appointed a receiver with full powers in the operation of the road, with power to borrow money if needful, in his judgment, to make payment for rent and other charges, including the rent of locomotives and rolling stock, to pay current necessities, for labor and supplies, but for no other purposes without an order of the court.

On behalf of appellees it was urged that the trustee, notwithstanding the provision of the deed of trust, was not the only person who could maintain the suit for foreclosure, and that it was not necessary that a new trustee should be appointed, as provided in the deed of trust, before such a suit could be brought. Equity will not permit a trust to fail for lack of a trustee. But the other special demurrer raises a more serious question, viz.: That there was a defect of parties defendant unexplained by any averments or any prayer that the bondholders who were made parties be allowed to defend for them.

Appellees claim that this special demurrer can not be here considered, because the record does not show the filing of the demurrers or of the answer in which they were included. As to this, it may be said that none of the pleadings copied in this record are by the record shown to have been filed; they are, however, re-

ferred to in the record as petition and answer, which would imply that they had been filed, and the fact that the court disregarded the demurrers in its action would also indicate that it treated them as over-ruled. Assuming that it did so, this action of the court, in our judgment, was error to the prejudice of appellant. But without deciding whether the demurrers were filed or acted upon we have concluded that the date of the clerk's certificate of acknowledgment by the mortgagor shows that the complete execution and acknowledgment of that mortgage, so far as appears from this record, took place at a later date than the execution of the lease to the Louisville & Nashville Railroad Company. Therefore, and without necessarily considering the undenied averments of the answer of the L. & N. R. R. Co., which was read as evidence, to the effect that the lease was entered into with the knowledge and assent of the appellees, it appears that the Louisville & Nashville Railroad Company has an intervening equity prior to the rights of the bondholders, and that, so far as this record shows, the lessee was entitled to remain in possession under its lease.

It is well settled, as claimed by appellees, that the appointment of a receiver is largely in the discretion of the court (Douglas v. Cline, 6 Bush, 608; Harman v. Ky. C. I. & D. Co., 15 R., 12; Woodward v. Woodward, 17 R., 464). In Douglas v. Cline, however, the receivership was not resisted, and in the other two cases the lower court declined to appoint a receiver.

Some stress is put in the argument for appellees

upon the provision in the deed of trust that the trustee shall be entitled to a receivership of the rents, issues and profits of the railroad during the pendency of a suit to foreclose. This agreement, however, between the mortgagor and the mortgagee can not be so construed as to affect the rights of parties holding intervening equities, even if an agreement providing that one party to a contract should be entitled to a particular remedy can be construed to take away from the chancellor the discretion vested in him by sections 298 and 299 of the code. In the case of Woolley v. Holt, 14 Bush, 788, this court said: "When there are no intervening equities of other parties the court may, on it appearing that the mortgaged property is in danger of being lost, removed or materially injured, or that the condition of the mortgage has not been performed, and that the property is probably insufficient to discharge the mortgage debt, appoint a receiver and subject the subsequently accruing rents or profits to the satisfaction of the mortgagee's claim. Fourth, where another than the mortgagee has acquired a legal or equitable interest in or title to the rents or profits, prior to the appointment of a receiver, as provided in section 299 of the Civil Code, the mortgagee's claim to such rents or profits will be postponed to that of the intervening claimant." So far as regards the charges made by implication in the petition, and in Mr. Lacey's testimony of extravagance and mismanagement by the lessee, the remedy of appellees would seem to be by suit for an accounting, and not by an application for a receivership.

In our opinion the lower court erred in granting the application for a receiver upon the record as it stands, and the judgment is, therefore, reversed and the cause remanded with directions to set aside the order appointing the receiver, and for further proceedings consistent with this opinion.