## Evans' Administrator et al. v. Clinton Bank et al.

(Decided May 27, 1932.)

BENNETT, ROBBINS & SMITH and J. H. SHELTON for appellants.

F. B. MARTIN, J. D. VIA and L. L. HINDMAN for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This is an appeal from a judgment of the Hickman circuit court appointing a receiver pursuant to section 298 of the Civil Code of Practice to take charge, rent out, or cultivate for the year 1931 the farm of E. E. Evans, deceased, and supplemental order affirming and making effective such order of appointment.

These appear to be the facts:

In July, 1930, E. E. Evans died intestate, the owner in fee of a large farm of some 350 acres in Hickman county, Ky. He was survived by his widow, Alma Evans, and three children, Jerry Evans, Coy Evans, and Aolia Evans. At the time of his death he was heavily indebted and admittedly insolvent.

On August 4, 1930, his widow, Alma Evans, waiving her right to administer upon the deceased's estate, his son, Coy Evans, was appointed administrator, duly qualified as such, and assumed the duties of his trust. On August 14, 1930, he filed his suit in equity as administrator, seeking a settlement of the estate, and asked that an order of reference to the master commissioner be made.

In the petition the appraised value of the estate, as well as its indebtedness, was set out, allotment of dower to widow asked, and sale of decedent's lands sought as necessary to complete administration upon the insolvent estate.

The creditors of the estate, widow and heirs at law were made defendants in said action. The personal estate was appraised at some $1,400, and the administrator executed approved bond in the sum of $2,000.

Some dissatisfaction arising among the defendant creditors upon the alleged grounds that Coy Evans was

converting and conspiring with his mother, Alma Evans, to convert the estate to their own use and benefit and to the hurt of its creditors, they filed attachment suits against the administrator, whereupon, though denying the charge of conversion and asserting that the funds used by him were due him as a partner of his deceased father, he resigned his trust, whereupon, on August 21, his mother, Alma Evans, was appointed to succeed him and duly qualified by taking oath and executing bond in the penal sum of $10,000 for her proper administration of the trust.

A new appraisement of the estate was made as subsequent to its first appraisement a $2,000 policy of insurance upon the life of the decedent had been found. Such new appraisement, inclusive of the insurance, showed the personal estate to be of the value of some $4,000.

The administratrix further amended the petition previously filed by Coy Evans to settle the estate by substituting herself as plaintiff therein and making Coy Evans a defendant.

In February next thereafter certain of the creditors named as defendants in the settlement suit, to wit, the Clinton Bank, the First National Bank of Clinton, Ky., B. F. Featherstone, and Lorena Perry, gave notice to the said Alma Evans as administratrix and individually and to said named heirs at law of the decedent Evans that they would move for the appointment of a receiver to take charge of and rent the decedent's farm for the year 1931, pursuant to which they filed their motion therefor February 19, 1931, wherein they sought the appointment of such receiver upon the grounds of the former alleged conversion by Coy Evans of certain funds of the estate, and that they required the appointment of a receiver to rent out and preserve the rents of the farm for the year 1931, as was necessary, otherwise such farm rents would be lost to them through its use and conversion by Coy Evans and his mother, Alma Evans.

Defendants therein filed a general demurrer to the motion, which was overruled, and also response thereto denying the allegations of conversation of any part of the estate by Coy Evans, and also denying their right to the appointment of a receiver as asked in their motion upon the grounds that the same was unnecessary to protect their rights as creditors of the estate, inasmuch as the bonds given by both Coy Evans and Alma Evans as

administrator and administratrix respectively of the estate fully guaranteed the payment or accounting to them of any and all moneys received by them or either of them as administrators of the estate, and further denying their right to an appointment of a receiver to collect and hold such rents upon the ground that such rents for the year 1931 belonged to and were the property of the heirs at law and not the decedent's estate, or were not a fund to which said estate creditors were entitled.

Reply was filed denying the allegations of the response and its allegations controverted of record by agreement of parties.

Upon submission and trial of the motion, proof was heard, and the court adjudged that the motion for a receiver be sustained, and further directed that Lonnie Kimbro be appointed receiver to take charge of, cultivate, or rent out the place for the year 1931, and that he execute bond in the penal sum of $2,500 for the proper performance and discharge of his duties as such receiver.

From this judgment this appeal is prosecuted.

It will be noted the motion for a receiver to rent out the farm for the year 1931 was sought by the plaintiffs in the motion of defendant creditors upon the grounds of their alleged former former conversion of estate funds by Coy Evans, and that the creditors were entitled to the 1931 rents of the farm which they sought to preserve for their benefit through the appointment of a receiver, though they did not further allege in the motion that any injury, present or threatened, or any waste, present or threatened, to or of the farm existed for protection against which receivership was asked.

The evidence introduced in support of the motion was in substance to the effect that Coy Evans, while administrator, had converted funds of the estate by depositing checks received by him as such to his personal account and use which by their terms were made payable to E. E. Evans, the decedent.

Upon cross-examination, however, it was shown that the said Evans claimed that he was entitled to so deposit and use such funds received as representing amounts due him under a partnership arrangement had with his father in his live stock business, and that these checks represented sale proceeds of their partnership live stock

business, and, when received by him, were deposited in the banks of the defendant creditors, and by him, for the most part, applied in the payment to them of his debts owing them. Also it was shown that the payment of a part of such funds to his mother was by her deposited and remained on deposit with one of the complaining banks, and that such use thereof had been directed by his attorney assisting him in the administration of the estate, who was also attorney for one of the defendant banks.

Also one or two witnesses testified that, while a continuous cultivation of the farm in corn, without rotation of other crops, would be hurtful to the farm's value, it was not shown by any evidence that such hurtful use of the place was contemplated by the administratrix or her son, Coy Evans, in their proposed management of the farm for the year 1931.

Also the evidence tended to show that, even if the defendant creditors were entitled to have the rents of the farm for the year 1931 paid to the estate rather than be retained by the heirs at law, such rents could not have amounted to more than $1,500 to $2,000, and that the two bonds amounting to $12,000 given by Coy and Alma Evans fully guaranteed to the defendant creditors a proper accounting for such 1931 rents of the farm even in their said estimated maximum amount, if they should be adjudged entitled thereto, and therefore that their remedy at law upon the bonds was fully adequate for the protection of all alleged interest or right of theirs in the rents without the appointment of a receiver to preserve same.

Further, it will be particularly noted that the evidence of the plaintiffs in the motion as to their right under section 298 of the Civil Code of Practice to have a receiver appointed was based upon the theory as stated and admitted that they, the creditors, and not the heirs of the estate, were entitled to the benefit of the 1931 rents to be had from the farm.

From this consideration of the facts presented upon this appeal, we will first consider what are the established legal principles controlling and guiding a chancellor in the exercise of his discretion in the matter of the appointment of a receiver.

In Greasy Creek C. & L. Co. et al. v. Greasy Creek Coal Co., 196 Ky. 67, 244 S. W. 85, 88, in discussing the right of a chancellor under section 298 of the Civil Code of Practice to appoint a receiver, the court said:

"Under section 298 of the Civil Code, the power to appoint a receiver, at the instance of one who has, or probably has, the right to a lien upon or an interest in any property or fund, exists only where the property or fund is in danger of being lost, removed, or materially injured. This provision of the Code is a limitation on the power of the courts, and it has been uniformly held thereunder that the one seeking the appointment must show one of the three conditions mentioned: that is, that the property is in danger of being lost, or of being removed, or materially injured. Whatever inherent power of appointment a court of equity may have, the Legislature, in the adoption of this provision of the Code has defined the states of case in which the power can be lawfully exercised. Aside from this defined and restricted authority, it is the general rule that a receiver will not be appointed unless it appear that the appointment is necessary either to prevent fraud or to save the property from injury or threatened loss or destruction. 23 Ruling Case Law, 18."

And again in Elkhorn Hazard Coal Co. v. Fairchild, 191 Ky. 276, 230 S. W. 61, 64, it was said:

"The appointment of a receiver is a matter always within the sound discretion of the court, to be exercised, however, in accordance with established legal principles. Woodward v. Woodward, 31 S. W. 734, 17 Ky. Law Rep. 464; Hurst v. Nicola Bros., 65 S. W. 364, 23 Ky. Law Rep. 1406; L. & N. R. R. Co. v. Eakins, 100 Ky. 745, 39 S. W. 416, 19 Ky. Law Rep. 54. The appointment of a receiver is in the nature of a provisional remedy, but is the last of that sort of remedies to be resorted to. . . . One of the established legal principlas controlling the appointment of a receiver is that it should be refused when the plaintiff has another adequate remedy. McClure v. McGee, 128 Ky. 467, 108 S. W. 341 [32 Ky. Law Rep. 1318]; Collins v. Richart, 14 Bush 621; Floor v. Floor, 87 S. W. 272, 27 Ky. Law

Rep. 894; 34 Cyc. 23; Tarvin v. Walker's Creek Coal & Coke Co., 109 Ky. 579, 60 S. W. 185 [22 Ky. Law Rep. 1473]; Harmon v. Ky. Coal, Iron & D. Co., 21 S. W. 1054, 15 Ky. Law Rep. 12.''

It will further be noted that the applicants herein for the appointment of a receiver to collect and hold the rents of the farm are general creditors of the estate, not mortgagees or lien holders against the farm, with the exception of Lorena Perry, who it appears has a vendor's lien upon a certain 30-acre tract of this 350 acre farm, but her lien is, by the deed, upon the small tract only, and is not a lien upon its rents or the rents of the farm. As was said in case of Collins v. Richart, 14 Bush 621,

"Courts of Equity have always been reluctant to interfere with the possession of real estate by the appointment of a receiver, and they never do so unless the remedy at law is incomplete. . . . The vendor who conveys and puts his vendee in possession, reserving a lien for purchase-money, reserves that lien upon the land and not upon the rents or profits. He vests the vendee with the legal title and the right, under the contract of sale, to use and occupy the property. He looks to the land and to his personal judgment against his vendee for the satisfaction of his claim. The right to possess and use the land by the vendor does not follow as an incident to the breach of the vendee's covenant to pay. The vendor occupies a no more favorable attitude, so far as concerns the property and property-rights of the vendee, than any other creditor, except to the extent of his lien upon the land sold by him.''

The general rule as to the right of appointment of a receiver by the chancellor, in that it rests in the exercise of a limited discretion, is thus stated in 23 R. C. L. sec. 15:

"To authorize the appointment of a receiver, the petitioner must show either a clear legal right in himself to the property in controversy, or that he has some lien upon or property right in it, or that it constitutes a special fund out of which he is entitled to satisfaction of his demand.''

And again in 3 Pomeroy's Equity Jurisprudence, section 1431, is is said:

"The appointment of a receiver is as a general rule discretionary. The discretion is not arbitrary or absolute; it is a sound and judicial discretion, taking into account all the circumstances of the case, exercised for the purpose of promoting the ends of justice and of protecting the rights of all the parties interested in the controversy and subject matter and based upon the fact that there is no other adequate remedy or means of accomplishing the desired objects of the judicial proceedings."

The plaintiffs in the motion in the instant case have failed to allege therein as a ground therefor that any injury or damage to the farm in question is threatened through being left in the custody and control of the defendant heirs at law for the year 1931, and defendants objected to the plaintiffs' introduction of evidence tending to show such threatened injury or deterioration of the farm as incompetent because of its not being supported by proper allegation in pleading therefor. While this objection was overruled by the trial court, we are of the opinion that this permitted evidence signally failed to show any condition of threatened injury or deterioration of these farm lands through their being left in the custody and control of the heirs at law, as it is admitted by the defendant witnesses that Coy Evans, who it is alleged was to be in charge and control of the place for the year 1931, is a good farmer and quite capable of giving it the proper cultivation and husbandry, nor do they testify that he contemplates or threatens to again plant the farm during such year wholly in corn, which by the testimony of some of the witnesses is claimed would be injurious to the land, if done without an intervening rotation of crops.

Without here considering or further discussing these minor claims, we are of the opinion that the plaintiffs in the motion have failed to show themselves entitled to have appointed a receiver to hold the 1931 rents of the farm upon the alleged ground mainly urged that the defendants would convert and fail to account for such rents, for the reason it clearly appears that they have an adequate remedy at law upon the administratrix' bond to secure an accounting for such rents received by the

heirs at law, should they be able to sustain their claim that the administratrix of the estate and not the heirs at law of decedent are entitled to these 1931 rents. However it is perhaps not amiss to here state we deem their contention that these 1931 rents are a special fund to which they as estate creditors can look for the payment of their debts cannot be sustained, for this question has frequently been considered and otherwise decided by this court.

In the case of Vance v. Vance's Administrator, 116 Ky. 520, 76 S. W. 370, 25 Ky. Law Rep. 741, the court considered a similar question therein presented, and in its opinion, citing with approval numerous other cases of like holding, spoke as follows:

"In Ball v. First National Bank, 80 Ky. 501, the testator died insolvent, and the suit was filed to settle his estate. The real estate had been rented by the testator to tenants who paid the rents monthly, and the controversy arose between the heirs and the creditors of the testator as to the title to the rents. It was held that rents accruing before the death of the testator vested in the executor as assets, but that the rents accruing after the death of the testator, and before the confirmation of the sale, belonged to the heirs. The court said: 'If the property descended is being wasted, or about to be sold, so as to defeat or delay the creditors of the ancestor, there is ample remedy to prevent either, and preserve the property for the satisfaction of his debts; and the remedy afforded by law on this alternative state of facts is an additional reason for allowing the heirs to take the rents so long as he holds the title and is entitled to the possession. It is insisted by counsel for the creditors, that as the chancellor has jurisdiction for the settlement of the estate, he should maintain it for all purposes, and therefore subject the rents accruing after the death of the ancestor, to prevent a multiplicity of suits against the heirs for their aliquot parts. This argument is founded on a premise which does not exist, but is erroneously assumed, as no action could be maintained for rents thus accruing, and the chancellor has no incidental jurisdiction over the rents, because they are neither legal nor equitable assets of the estate.' . . ."

From a consideration of the legal principles announced in these cases as limiting and controlling the discretionary power of a chancellor in the appointment of a receiver as being a judicial discretion restrained in its exercise by such rules and established legal principles, we are of the opinion that the learned chancellor erred in herein sustaining the motion for the appointment of a receiver to take charge of and rent the farm in question for the year 1931 by reason of the fact that the plaintiffs in the motion failed to show both that they did not have an adequate remedy at law upon ample bond to secure and collect from administratrix a proper and just accounting for any rent in controversy to which they might later be adjudged entitled in the pending suit to settle decedent's estate; and further in having failed to show themselves entitled, as against the heirs at law, to this 1931 farm rent in question or that they were possessed of any clear legal right or interest in said rent in controversy or that such rent constituted such special fund out of which the petitioners were entitled to look for a satisfaction of their debt demands. We are of the opinion that, as to protecting alleged rights of this character, lack of legal remedy therefor should have been shown by petitioners as a ground entitling them to the appointment of a receiver as asked. Holding such view of the limited discretionary right of a chancellor to appoint a receiver, we have carefully examined both the pleading and evidence presenting the case in which the chancellor exercised his alleged discretionary right of appointment, and it is our opinion that the record made an insufficient showing of either a threatened danger to the farm rent in question or the right on the part of the creditors to such rentals as justified the chancellor's appointment of a receiver therefor.

For the reasons indicated, the judgment herein appointing a receiver for appellees is reversed, and the cause remanded for other proceedings consistent herewith.