# Mortgage Union of Penn v. King et al.

(Decided November 4, 1932.)

M. B. PFEFFER and LAWRENCE S. GRAUMAN for appellant.

MORRIS B. GIFFORD and WILLIAM D. BECKER for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This is an appeal from an order entered in the chancery branch of the Jefferson circuit court, over-ruling the motion of appellant, the Mortgage Union of Penn, for the appointment of a receiver to take charge of and rent out the residence property of appellees mortgaged it.

The facts are these: On December 10, 1928, the appellees, Dora King and Arthur King, executed and delivered to the McAllister Land Company, a corporation, their note for $862.55, and to secure the payment thereof they further executed and delivered to it a mortgage on their house and lot located on Twentieth street, Louisville, Ky., conveying this property "together with the rents and profits thereof."

In the following March, 1929, the said mortgagee, the McAllister Land Company, having changed its name by amendment of its articles of incorporation to that of Real Estate & Mortgage Company of Louisville, assigned to appellant, the Mortgage Union of Penn, this note and mortgage.

Thereafter, appellees having defaulted in the installment payments provided for in said note and mortgage, the appellant, the Mortgage Union of Penn, in March, 1932, brought this foreclosure action against appellees to collect the balance owing on its mortgage debt and enforce its mortgage lien securing same.

Appellants by their petition alleged the execution

of the said mortgage to secure appellees note of even date, whereby it conveyed the appellant the said house and lot as therein described, with its improvements and appurtenances, together with the rents and profits thereof. They further alleged default in payment of the mortgage debt and prayed enforcement of its mortgage lien.

Thereupon, appellees filed motions that the appellant be required to execute bond for costs; further, that it be required to make its petition more definite by stating the dates and amounts of appellees' payments made upon the note, to whom same were paid, and also that it set out the consideration for said note and to whom and how paid.

Whereupon, appellant, treating said motion as dilatory pleas, alleged made for the purpose of delaying the prosecution of the action, and before answer was filed or due to be filed, moved the court upon the grounds provided for in section 299 of the Civil Code of Practice, namely, "that the condition of its mortgage had not been performed and that the mortgaged property was probably insufficient to pay its mortgage," to appoint a receiver to take charge of the mortgaged real estate and to collect the pledged rents and profits to be had therefrom and apply them towards a reduction of the plaintiffs' debt, interest, and costs.

Due notice of the making of said motion was given the appellees, and said motion was supported by affidavit of plaintiff company averring that by virtue of the mortgage executed to it by the appellees, as set forth in the petition, the plaintiff had a lien on the property and on the rents; that the defendants (appellees) had broken the conditions of the mortgage; and that said property was probably insufficient to discharge the mortgage debt.

Thereafter, the motion for the appointment of a receiver was heard upon the oral proof of the parties, which is duly here presented in the transcript of evidence.

By appellees' testimony thus heard, it appears that in December, 1928, they were owing to the defendant Portland Building & Loan Association a balance of some $200 upon a prior mortgage executed it upon the property in controversy and another lien debt or two

against it of about $100, the same making a total of $312. Appellees state that they were solicited by a representative of appellant company to secure a loan from appellant, the then McAllister Land Company, in this amount with which to pay off said indebtedness and to secure its payment by a mortgage on the home property in controversy. Appellees further testify, however, that when they undertook to consummate this cash loan of $312, appellant required that they purchase from it one of its Beuchel subdivision lots at a price of $550, and that they executed to appellant a note for $862, covering both the amount of the cash loan sought and also the purchase price of the lot and secured its payment by executing the mortgage before us upon their house and lot located in Louisville and then occupied by them as a home; they state that appellant then explained to them by way of inducing its execution upon their unwillingness to encumber their home with such larger amount of indebtedness, caused by the addition of the purchase price of the lot, that when the appellees should pay it the amount of their cash loan of some $312 and interest, if they did not then desire to carry out their purchase of the lot, it would release them therefrom and that, upon such assurance and agreement then made, they executed the note and mortgage upon their home for $862.55 to secure the accommodation of the $312 cash loan, of which they were then badly in need.

Appellant denies the making of the stated agreement or that any fradulent misrepresentation or unconscionable agreement was practiced by it in securing from appellees the note and mortgage which they are here seeking to collect and foreclose against the house and lot in controversy.

Appellees state that in 1929, upon their falling behind with their installment payments and being threatened with foreclosure of their mortgage debt, they called upon appellant, reminding it of this alleged agreement made with them, which appellant denied. Whereupon, appellees continued to make payments upon their mortgage, until they had paid appellant a total of $414 or more than the amount of the cash loan made them.

In 1932, appellees having defaulted in the payment of the balance alleged owing upon their mortgage note of $862.55, this suit, as stated, was filed against them,

seeking judgment for the sum of $560 as the alleged balance owing upon the note and enforcement of their mortgage lien against the mortgaged property.

Thereafter, certain defensive pleas having been filed by appellees to its petition seeking enforcement of its lien, the appellant, upon due notice given, moved for the appointment of a receiver to take possession of the mortgaged property, pursuant to the provision of the mortgage pledging its rents and profits, and to rent out the same to the end of applying the rents so received to the reduction of its mortgage debt.

The receivership sought by this motion was, upon proof heard by the court, denied it.

The appellant insists that the court's order in overruling its motion for the appointment of a receiver to rent out the mortgaged property pendente lite was substantially prejudicial to it, in that by reason of the pledge made it under the mortgage contract of the rents and profits of the property, it had a specific lien thereon, by reason of which it became not discretionary but mandatory upon the court to appoint a receiver therefor in order to preserve and enforce its lien thereon.

Counsel for appellant, together with several associate counsel, serving with them as amici curiæ, have presented for our consideration upon their appeal a most exhaustive and comprehensive brief, wherein they discuss every phase and angle of this question of the mortgagee's right to take possession of the mortgaged property upon mortgagor's default and secure the rents and profits therefrom through the appointment of a receiver, where, by the express provision of the mortgage contract, the rents and profits to be derived from the property are recited as pledged mortgagee as security for its debt in addition to the mortgage on the property itself. Appellant contends that where such is the case, it is entitled to have a receiver appointed and collect the rents as a substantive legal right thereto secured by contract independently of its right to a receiver for the mortgaged property under section 299 of the Civil Code of Practice providing that:

"In an action by a mortgagee for the sale of the mortgaged property, a receiver may be appointed, if it appear that the property is in danger of being

lost, removed or materially injured or, that the condition of the mortgage has not been performed, and that the property is probably insufficient to discharge the mortgage debt.''

Appellant claims that the mortgage by its terms in pledging the rents and profits of the property is such by the force of its own terms as to appropriate them to the payment of appellant's debt, and contends that when the rents and profits are pledged under the terms of the mortgage, the mortgagee has the legal right to the appointment of a receiver; that in such case it is not discretionary with the chancellor to refuse to appoint a receiver when the mortgagee moves therefor, but that the appointment of a receiver for such purpose is discretionary with the chancellor only in those cases where the rents and profits have not been expressly pledged by the mortgage. Therefore, it insists that in the instant case the rents and profits of the mortgaged property being pledged as security for the mortgage debt by the express terms of the mortgage, it is entitled to the appointment of a receiver as a legal right as being based on the mortgage contract, regardless and independently of any rights that it might have thereto under the provisions of section 299 of the Civil Code of Practice; that in such case where the terms of the mortgage expressly pledge the rents and profits, the language of the Code provision, supra, that ''a receiver may be appointed,'' means that one *must* be appointed and cites many decisions of this and other states and text-book authorities in claimed support of its contention, all of which have had our most careful review and consideration.

However, the ruling of the learned chancellor herein, which is so insistently and with such fulsome argument objected to by appellant as erroneous, we are of the opinion is not controlled or to be determined by the rules and principles of law repeatedly enunciated in these cited authorities as being here applicable to the determination of the validity and merit of appellant's objection to the chancellor's ruling herein complained of.

It will be noted that appellant by its petition herein seeks to enforce its mortgage lien upon the mortgaged property and does also by its later motion made for the appointment of a receiver, both by the language

of said motion as well as by that of its supporting affidavit, rely upon section 299 of the Civil Code of Practice and bases its right to the appointment of a receiver upon the grounds therein specified, ''that the condition of the mortgage has not been performed, and that the property is probably insufficient to discharge the mortgage debt.''

It was shown by the evidence heard by the chancellor upon the motion for a receiver that the city assessment of the property in controversy was in an amount sufficient to show a value much in excess of the appellant's debt sued for, and that the learned chancellor thereby found that the value of this property, for which a receivership was asked, was such in itself as to be reasonably sufficient, without augmentation by the rents and profits derivable, through the appointment of a receiver therefor, to pay the mortgage debt. This clearly appears from the languge of the court used in the course of its opinion, which is as follows:

''Now there is no showing here that this property is in any danger of being destroyed unless it is taken into the custody of the Court. There is no showing, I don't think there is any sufficient showing here, that it is insufficient to discharge a mortgage debt.''

We are of the opinion that the evidence heard by the court as to the value of this property was fully ample to sustain the court's finding that it was sufficient in amount to satisfy the mortgage debt, and such being the case, in keeping with the well established rule, we are not disposed to disturb the chancellor's finding, nor upon his so finding, to consider as erroneous his exercise of a judicial discretion in thereupon denying the appointment of a receiver to collect rents pledged for the payment of the debt.

We deem it unnecessary here to prolong this opinion with a lengthy discussion of the points raised in brief of counsel, as we are of the opinion that the court's complained of ruling herein, in denying the appointment of a receiver, was made upon appellant's application therefor, as based upon the provisions of section 299 of the Civil Code of Practice and under which the chancellor found appellant was not entitled to a receiver for rents, upon the ground therein provided and

recited, that the property was insufficient to pay the debt.

The appellant, in support of his contention here made that it has a legal right to have a receiver appointed under the clause of the mortgage pledging the rents and profits of the mortgaged property, strongly relies upon the case of Handman v. Volk et al. (Ky.) 99 S. W. 660, 661. However, the facts therein, as they appear to have been found by the court from the language of the opinion, are not in conflict with our view above indicated. The language of the opinion is as follows:

"We have said above that it is doubtful as to whether or not the real estate, at the maturity of the mortgage, would pay the debt and accrued interest. * * * It is easy to imagine that this small piece of real estate might, in the long term of the mortgage, deteriorate very much in value, especially if its improvements were allowed to fall into ruin. * * * Appellee has no right to say to appellant, 'You wait until the end of the 18 years, and then collect your debt by a sale of the real property'; when the contract provides that it shall be paid, in part, at least, out of the rents and profits."

The mortgage debt in that case was for $1,800, payable in eighteen annual installments of $100 each with no precipitating clause therein.

In 53 Corpus Juris, p. 19, the nature, grounds, and propriety of receivership are defined as follows:

"Relief by way of receivership is equitable in its nature, and is controlled by and administered upon equitable principles, even where it has been extended by statute, according to some, although not other authorities. The appointment of a receiver is made by a court of equity, in the performance of one of its prerogative functions, and as incidental to, and in aid of, its jurisdiction, in order to enable it to accomplish, as far as practicable, complete justice between the parties before it."

Again, in Elkhorn Hazard Coal Co. v. Fairchild, 191 Ky. 276, 282, 230 S. W. 61, 64, the court announced this rule, to like effect as follows:

"The appointment of a receiver is a matter always within the sound discretion of the court, to be exer-

cised, however, in accordance with established legal principles. Woodward v. Woodward (Ky.) 31 S. W. 734, 17 Ky. Law Rep. 464; Hurst v. Nicola Bros. (Ky.) 65 S. W. 364, 23 Ky. Law Rep. 1406; L. & N. R. R. Co. v. Eakins, 100 Ky. 745, 39 S. W. 416, 19 Ky. Law Rep. 54.''

Our view of the applicable rule controlling and directing the chancellor, in the exercise of his judicial discretion in granting or denying the motion for a receiver under circumstances analogous to those herein presented, is well declared and set out in the case of Aetna Life Ins. Co. v. Broeker et al., 166 Ind. 576, 77 N. E. 1092, wherein the court thus wrote:

"The general rule is that to justify the appointment of a receiver pendente lite the mortgagee must show that the premises are insufficient to secure the payment of the mortgage debt, and that the mortgagor, or person executing the note, is insolvent. High on Receivers (3d Ed.) sec. 643. Where the rents and profits are specially mortgaged a somewhat less stringent rule may be applied, but the existence of such a provision, even when coupled with the stipulation that a receiver may be appointed in case of default, does not, per se, require the appointment of a receiver, and ordinarily at least it is a sufficient reason for refusing the application, notwithstanding such provisions, that the land is an ample security for the debt. The rule is general in the United States that from the viewpoint of equity the benefical title to the property is in the mortgagor, and the mortgage is regarded as a mere security. In view of this, courts of equity, according to the weight of authority, are not disposed to give such provisions controlling force.

"The appointment of a receiver is a remedy; it is a part of the procedure of courts of chancery to conserve and enforce equitable rights, but it is not an equity in itself, and parties cannot bargain concerning the exercise of the jurisdiction. Such provisions, no doubt, may be entitled to some weight upon the application, but a court of equity will not enforce them where it would be inequitable or unconscionable to do so. Bagley v. Illinois Trust & Savings Bank, 199 Ill., 76, 64 N. E. 1085;

Hazeltine v. Granger, 44 Mich. 503, 7 N. W. 74; Paine v. McElroy, 73 Iowa, 81, 34 N. W. 615; C. B. Keogh Mfg. Co. v. Whiston (Sup.) 14 N. Y. S. 344; Brick v. Hornbeck, 19 Misc. 218, 43 N. Y. S. 301; Degener v. Stiles, 53 Hun, 637, 6 N. Y. S. 474; New York Building Loan Banking Co. v. Begly, 75 App. Div. 308, 78 N. Y. S. 169; Eidlitz v. Lancaster, 40 App. Div. 446, 59 N. Y. S. 54; United States Life Insurance Co. v. Ettinger, 32 Misc. 378, 66 N. Y. S. 1; Jarvis v. McQuaide, 24 Misc. 17, 53 N. Y. S. 97. In Brick v. Hornbeck, supra, it was said concerning such a clause as the one before us: 'Unless the land is inadequate security, the appointment of a reeciver is an unnecessary annoyance and hardship. * * * Parties may not by contract impose an obligation upon courts in such a respect. Extraordinary remedies are not resorted to unless required to do full justice. It is for the court in every instance to determine whether it should take upon itself such a trust, and whether it should do so in a case like this depends upon whether it is necessary for the security or protection of the mortgagee.' "

Wherefore, having these equitable principles and considerations suggested in mind, we are not disposed to assert or hold, upon the facts as found by the trial court upon the evidence heard by it, namely, that the mortgaged property was sufficient to pay the mortgage debt, that the chancellor abused his discretion in refusing to sequester the rents and profits derivable from the property by appointment of a receiver upon appellant's application.

Judgment affirmed.

Whole Court sitting.