### In re SCHOENLEBER.

No. 2630.

District Court, D. Nebraska, Lincoln Division.

Jan. 18, 1936.

376

---

J. Jay Marx, of Lincoln, Neb., for debtor.

Moran & James, of Nebraska City, Neb., for Kansas City Life Ins. Co.

George B. Clark, of Tilden, Neb., Elmer McClain, of Lima, Ohio, N. H. Cornell, of Schuyler, Neb., Morgan, Sutton & Fromkin, Morsman & Maxwell, Charles S. Reed, Albert L. Ramacciotti, and Richard E. Robinson, all of Omaha, Neb., Calvin Webster, of York, Neb., Field, Ricketts & Ricketts, Hall, Cline & Williams, and Boehmer & Boehmer, all of Lincoln, Neb., Tinley, Mitchell, Ross & Everest, of Council Bluffs, Iowa, J. H. Wiltse and Bayard T. Clark, both of Falls City, Neb., and A. R. Oleson, of Wisner, Neb., amici curiæ.

Before MUNGER and DONOHOE, District Judges.

PER CURIAM.

In this case, Charlotta A. Schoenleber, the debtor, filed a petition in March, 1934, under the provisions of section 75 of the Bankruptcy Act (11 U.S.Code, § 203, 11 U. S.C.A. § 203), alleging that she was engaged in farming operations and was insolvent and unable to meet her obligations as they matured.

The schedules disclosed an excess of liabilities over assets. The debtor listed 320 acres of farm land as owned by her, which was encumbered by a first mortgage to the Kansas City Life Insurance Company, and by a second and third mortgage to other parties. The petition was referred to a conciliation commissioner. Proofs were made of these mortgages, and each was allowed by the commissioner. From the proofs, it appears that the note and mortgage now held by the Kansas City Life Insurance Company was executed by the debtor and her husband in 1923, and by this note and mortgage the makers agreed to pay the principal sum of $27,000 on December 1, 1933, and that the principal sum was due, as well as sums of interest thereon, on June 1, 1933, and December 1, 1933. The mortgage contained a provision that, in the event of the commencement of an action to foreclose the mortgage, the mortgagee or its successors or assigns should have the right to have a receiver of the mortgaged property appointed at once, who should take possession of, control, and preserve the property, and collect the rents and profits thereof for the payment of the mortgage debt.

The debtor's petition, in this case, was filed after the Kansas City Life Insurance Company had begun a suit in the state court to foreclose the mortgage. An amended petition was filed by the debtor under the terms of the first Frazier-Lemke Act of June 28, 1934, 48 Stat. 1289, which was dismissed by the court after the decision of the Supreme Court declaring this act of Congress unconstitutional. Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 865, 79 L.Ed. 1593, 97 A.L.R. 1106. The amended petition was reinstated on application of the debtor after the passage of the second Frazier-Lemke Act, approved Aug. 28, 1935 (11 U.S.Code, § 203 (s), 11 U.S.C.A. § 203 (s). The Kansas City Life Insurance Company has submitted objections to this reinstatement and asks to have the order vacated, upon the ground of the unconstitutionality of the second Frazier-Lemke Act.

The original Frazier-Lemke Act was held to be invalid in the case of Louisville Joint Stock Land Bank v. Radford, supra. The mortgage considered in that case had been given upon lands in Kentucky, and a suit had been begun in the state court by the mortgagee seeking its foreclosure and the appointment of a receiver to control the premises and to collect the rents. The debtor in that case had proceeded under section 75 of the Bankruptcy Act, and, after the enactment of the original Frazier-Lemke Law, had filed an amended petition seeking the benefits of that act. The federal court,

in which this petition was filed, refused the mortgagee's request for a dismissal of the petition and affirmed several orders of the referee, one staying for five years all proceedings for the enforcement of the mortgages; another, that the mortgagor should remain in possession of the mortgaged property, subject to liens, and subject to the control of the court; another, fixing the rental value of the land for the first year, and declaring that each subsequent year's rental would be fixed by the court.

In its decision in the Radford Case, the Supreme Court held that the original Frazier-Lemke Act, as thus applied, had taken from the mortgagee, without compensation, and had given to Radford, rights in specific property which were of substantial value, and that this was a violation of the Fifth Amendment to the Constitution. The court said:

"The controlling purpose of the act is to preserve to the mortgagor the ownership and enjoyment of the farm property. It does not seek primarily a discharge of all personal obligations; a function with which alone bankruptcy acts have heretofore dealt. Nor does it make provision of that nature by prohibiting, limiting, or postponing deficiency judgments, as do some state laws. Its avowed object is to take from the mortgagee rights in the specific property held as security; and to that end 'to scale down the indebtedness' to the present value of the property. As here applied it has taken from the Bank the following property rights recognized by the Law of Kentucky:

"(1) The right to retain the lien until the indebtedness thereby secured is paid.

"(2) The right to realize upon the security by a judicial public sale.

"(3) The right to determine when such sale shall be held, subject only to the discretion of the court.

"(4) The right to protect its interest in the property by bidding at such sale whenever held, and thus to assure having the mortgaged property devoted primarily to the satisfaction of the debt, either through receipt of the proceeds of a fair competitive sale or by taking the property itself.

"(5) The right to control meanwhile the property during the period of default, subject only to the discretion of the court, and to have the rents and profits collected by a receiver for the satisfaction of the debt."

It may be conceded that the first, second, and fourth of these enumerated property rights of a secured creditor are now protected under a provision of paragraph 3 of section 6 of the second Frazier-Lemke Act (11 U.S.C.A. § 203 (3), by which such a creditor may require a public sale of the encumbered property.

The question remains whether rights similar to those enumerated in the Radford Case as Nos. 3 and 5 are given by the laws of Nebraska to the Kansas City Life Insurance Company, as owner of the mortgage under consideration, and, if they are, whether these rights are impaired or destroyed by the second Frazier-Lemke Act to an extent that constitutes a violation of the Fifth Amendment. As the foundation of the rights of the mortgagee in the Radford Case, the court referred to the law of Kentucky conferring such rights as follows: "Under the law of Kentucky, a mortgage creates a lien which may be foreclosed only by suit resulting in a judicial sale of the property. Civil Code of Practice, §§ 375, 376; Insurance Co. of North America v. Cheathem, 221 Ky. 668, 672, 299 S.W. 545. While mere default does not entitle the mortgagee to possession, Newport & Cincinnati Bridge Co. v. Douglass, 12 Bush (Ky.) 673, 705, section 299 of the Civil Code of Practice provides that, in an action for the sale of mortgaged property a receiver may be appointed if it appears 'that the property is probably insufficient to discharge the mortgage debt,' Mortgage Union of Penn v. King, 245 Ky. 691, 54 S.W.(2d) 49; and where there is (as here) a pledge in the mortgage of rents, issues, and profits, and provision for appointment of a receiver, the mortgagee is entitled as of right to have a receiver appointed to collect them for his benefit, Brasfield & Son v. Northwestern Mutual Life Insurance Co., 233 Ky. 94, 25 S.W.(2d) 72; Watt's Adm'r v. Smith, 250 Ky. 617, 630, 63 S.W.(2d) 796, 91 A. L.R. 1206. Under section 374 of the Civil Code of Practice a sale may be ordered at any time after default. Under Carroll's Ky. St. (1930), §§ 2362, 2364, there must be an appraisal before the sale; and if the sale brings less than two-thirds of the appraised value, the mortgagor may redeem within a year by paying the original purchase money and interest at 10 per cent. But inadequacy of price is not alone ground for setting aside a sale. Kentucky Joint Land Bank of Lexington v. Fitzpatrick, 237 Ky. 624, 36 S.W.(2d) 25. No provision

permits the mortgagor to obtain a release or surrender of the property before foreclosure without paying in full the indebtedness secured. Nor does any provision prohibit a mortgagee from protecting his interest in the property by bidding at the foreclosure sale. Thus, the controlling purpose of the law of Kentucky was and is that mortgaged property shall be devoted primarily to the satisfaction of the debt secured; and the provisions of its law are appropriate to ensure that result."

In Nebraska, also, a mortgage on lands creates a lien which may be foreclosed only by suit with resulting judicial sale. Comp. St.Neb.1929, § 76-235; Orr v. Broad, 52 Neb. 490, 72 N.W. 850; Barber v. Crowell, 55 Neb. 571, 75 N.W. 1109. A mere default does not entitle the mortgagee to possession, but in a foreclosure action a receiver may be appointed when the mortgaged property is probably insufficient to discharge the mortgage debt. Comp.St.Neb.1929, § 20-1081; Waldron v. First Nat. Bank, 60 Neb. 245, 82 N.W. 856; Philadelphia Mortgage & Trust Co. v. Oyler, 61 Neb. 702, 85 N. W. 899. The court in a foreclosure suit may decree a sale of the property or such part of it as may be sufficient to discharge the debts and costs of suit. Comp. St.Neb.1929, § 20-2140.

It will be observed that the substantive rights of the mortgagee which the decision in the Radford Case declared were rights which had been conferred either by the statutes of Kentucky or by decisions of its courts, allowing the mortgagee to proceed as it had done in an ordinary foreclosure suit. It is in this meaning of the words "rights" or "property rights" that the court declared that the mortgagee had the right, by proceeding in the state court in a foreclosure suit, to control the property during the period of default, subject to the discretion of the court, and to have the rents and profits collected by a receiver for the satisfaction of the debt. The Kentucky statute on this subject (section 299, Carroll's Civil Code of Practice) is as follows: "In an action by a mortgagee for the sale of the mortgaged property, a receiver may be appointed, if it appear that the property is in danger of being lost, removed or materially injured or, that the condition of the mortgage has not been performed, and that the property is probably insufficient to discharge the mortgage debt."

While the court referred to a right, under the decision of the Kentucky Supreme Court, to have a receiver appointed when there was a pledge to the mortgagee of the rents and profits, the right to such an appointment was also founded upon the statute just quoted. When the decision in the Radford Case described the substantive right of the mortgagee to determine when a judicial sale should be held, subject to the discretion of the court, it referred to the right of the mortgagee to begin a foreclosure suit and to seek therein a decree fixing a time for a sale under the decree. The Statutes of Kentucky allowed a decree to be entered in such a suit, ordering a sale of the property without giving further time to the debtor to pay the money due (Civ. Code Prac. § 374), except that it was prescribed in section 696 of the Civil Code of Practice as follows: "Every sale made under an order of court must be public, upon reasonable credits to be fixed by the court, not less, however, than three months for personal, nor six months for real property; and [it] shall be made after such notice of the time, place and terms of sale as the order may direct; and, unless the order direct otherwise, shall be made at the door of the courthouse of the county in which the property, or the greater part thereof, may be situated; and the notice of sale must state for what sum of money it is to be made." Section 14a-1, Ky.St., also provided for notice of the sale to be made by the posting of notices and by advertisement in a newspaper.

The mortgagee in the case under consideration is seeking substantially the same right to proceed in the state court of Nebraska to foreclose its mortgage and to determine when, subject to the discretion of that court, a judicial sale shall be held, as was sought by the mortgagee in the Radford Case.

The second Frazier-Lemke Act impairs the right of a mortgagee of land in Nebraska to proceed in a foreclosure suit and to enforce rights such as are numbered 3 and 5 in the Radford Case, in substantially the same manner, and to the same extent, as was done by the original Frazier-Lemke Act, except that the time of enforced delay is reduced from five years to three years, and the debtor is now allowed to make his final payment of rental within one year, instead of within six months from the date of stay, as was required under the prior act. Under either of these statutes the same dangers of an accumulation of unpaid taxes and interest, of waste and deterioration in

value, loss of opportunity to sell the property, and inability to collect the rental value, exists which are mentioned in the opinion in the Radford Case. An argument is presented that the court may prevent these dangers, and may protect the right of the mortgagee to proceed in a foreclosure action at any time, because of that portion of paragraph 3 of section 6 as follows: "Provided, That upon request in writing by any secured creditor or creditors, the court shall order the property upon which such secured creditors have a lien to be sold at public auction," and cite In re Slaughter (D.C.) 12 F.Supp. 206, as supporting this construction of this clause.

If this is the proper construction of the proviso, the query arises why the provisions were inserted in paragraph 4 authorizing the court to order a sale of the property in case the debtor fails to pay its appraised value into court within three years, or in case he fails to comply with any order of the court, and why the provisions were inserted in paragraph 2 authorizing the court to order a sale of nonexempt perishable property, or property not necessary for the debtor's farming operations, when a sale of the encumbered property could be ordered at any time, merely because the lienholder requested it? The provisions allowing the filing of an amended petition, for an appraisal of the value of the debtor's property, for the setting aside of the debtor's exemptions, for a mandatory order that the possession of the property shall remain in the debtor, provided he pays a rental value, beginning such payment within one year, for a stay of all judicial or official proceedings against the debtor for a period of three years and allowing the debtor to pay into court, within three years, the appraised value of the property, seem to be inconsistent with the theory that a secured creditor may obtain an order for the sale of the property on any day after the amended petition is filed and with the general purpose of the act to afford substantial delay of legal proceedings against the debtor. We prefer the construction placed upon this proviso in the case of In re Young (D.C.) 12 F.Supp. 30, as follows: "It is argued by the debtor that the second proviso of this paragraph gives the mortgagee the right to demand a sale of the mortgaged premises at any time after the court takes jurisdiction and therefore meets the constitutional objections pointed out by the Supreme Court in the Radford Case. With this reasoning we are not in accord. To place such a construction on the language of paragraph 3 would do violence to the whole purpose of the act. Neither do we think that the congressional debates on the subject lend support to any such theory. While the language of the act is inapt and uncertain, it undoubtedly was the purpose of Congress to give the secured creditor the right to demand a public sale of the mortgaged property only when the preceding provisions had expended their force. If and when the debtor might evidence a purpose to pay into court the appraised price of the land, then and then only the secured creditor might, if he saw fit, ask for a new appraisement with the further proviso that he might, if he should so elect, demand a public sale. We think, as a matter of construction of the act, that the time of such sale is in no way dependent upon the wish of the secured creditor, but must await the time during the three-year period when the debtor shall choose to act." See, also, In re Lowmon (Lafayette Life Ins. Co. v. Lowmon), 79 F.(2d) 887 (C.C.A. 7, Nov. 15, 1935).

■ Another contention is that the mortgagee is not deprived of its substantial rights for a period of three years, or any other fixed period, because of the final paragraph of the act, as follows: "This act is hereby declared to be an emergency measure and if in the judgment of the court such emergency ceases to exist in its locality, then the court, in its discretion, may shorten the stay of proceedings herein provided for and proceed to liquidate the estate." Bankr. Act § 75 (s) (6), as amended, 11 U.S.C.A. § 203 (s) (6).

No definition or description of the emergency is attempted in this act, as had been done in other acts of Congress (compare the statutes referred to in Block v. Hirsh, 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865, 16 A.L.R. 165, Chastleton Corp. v. Sinclair, 264 U.S. 543, 44 S.Ct. 405, 68 L.Ed. 841, A. L. A. Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947), by which the court may determine that an emergency exists in its locality, and no pleading or proof presents any question relating to it. See, also, Hanover National Bank v. Moyses, 186 U. S. 181, 188, 22 S.Ct. 857, 46 L.Ed. 1113; In re Slaughter (D.C.) 12 F.Supp. 206; Roberts on new Frazier-Lemke Act, 22 Am. Bar Ass'n Journal (January, 1936) 19.

■ A further contention is made that the act under consideration merely grants a val-

id moratory stay of proceedings under the principle of the decision in Home Building & Loan Ass'n v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, 88 A.L.R. 1481. A similar claim was considered under the Radford Case, and it was observed that the Minnesota statute gave discretion to the court to fix the time of delay within a two-year limit, and to reduce the time after it had been fixed. The act under consideration provides for a stay of all proceedings against the debtor for three years, and gives no discretion to the court to fix a shorter period of possession, provided the bankrupt pays his rental and obeys the orders of the court made pursuant to the act.

In the Radford Case the court dwelt upon the fact that the mortgagee was compelled to allow the bankrupt to remain in possession of the encumbered property for five years, during which time the bankrupt's only obligation was to pay a reasonable rental fixed by the court; that there was no provision for the payment of insurance or taxes, save as they might be paid from the rental received; that the time when a sale might be made was left to the bankrupt's choosing; that the court could not terminate the possession, unless waste was committed or there was a failure to pay the rental; and that under that act "the purpose of the delay in making a sale and of the prolonged possession accorded to the mortgagor is to promote his interests at the expense of the mortgagee." All of these observations apply to the second Frazier-Lemke Act, except that the term of allowable possession is reduced from five to three years. The act also seems to contemplate that any sale of the debtor's property shall be by a trustee in the bankruptcy proceeding and under orders of the bankruptcy court.

Whether the state court is thus permanently prevented from further proceeding, although it might already have proceeded to a judicial sale, or whether the stay is to continue for the full period of three years, or may be reduced if the debtor shall not perform the conditions prescribed, and the state court allowed to proceed, the creditor is deprived of his property without compensation, to the extent of time that the secured creditor is delayed in the enforcement of the two property rights numbered as three and five in the Radford Case, and those rights have been declared by the Supreme Court to be of substantial value.

The act of Congress, as applied to the rights of the mortgagee in this case, is therefore invalid, as a violation of the Fifth Amendment to the Constitution. In re Young, 12 F.Supp. 30 (D.C.Ill.); In re Sherman, 12 F.Supp. 297 (D.C.Va.). See, also, In re Lowmon (Lafayette Ins. Co. v. Lowmon), 79 F.(2d) 887 (C.C.A.7); In re Tracy (John Hancock Mut. Life Ins. Co. v. Tracy), 80 F.(2d) 9 (C.C.A.7, Nov. 14, 1935); In re Lindsay (D.C.) 12 F.Supp. 625.

An order will be entered dismissing the amended petition of the debtor, so far as it relates to the property covered by the mortgage of the Kansas City Life Insurance Company, and permitting the foreclosure action in the state court to proceed.